639 P.2d 575

**FIRST NATIONAL BANK IN ALBU-QUERQUE, Plaintiff-Appellant,**

**v.**

**Abe Essa ABRAHAM, aka Abe Abraham, Lillian Abraham and Susan Ayesh, Defendants-Appellees.**

**No. 13635.**

Supreme Court of New Mexico.

Jan. 13, 1982.

---

Rodey, Dickason, Sloan, Akin & Robb, Jo Saxton Brayer, Albuquerque, for plaintiff-appellant.

Bruce P. Moore, Santa Fe, John W. Higgins, John Budagher, Sara Powell, Albuquerque, for defendants-appellees.

## OPINION

FEDERICI, Justice.

This is an appeal from the District Court of Bernalillo County. The trial judge found that appellee, Abe Abraham, was liable to appellant, First National Bank in Albuquerque (FNBIA) on a promissory note; that appellee, Lillian Abraham, was not liable to FNBIA on the same note; and that the conveyances of real property by Abe and Lillian Abraham to appellee, Susan Ayesh, was not a fraudulent conveyance of creditor's rights of FNBIA. FNBIA appeals. We affirm.

The issues on appeal are:

I. Whether the renewal note signed by Abe Abraham on October 15, 1979, represented a community debt and was binding upon Lillian Abraham, even though the note was signed after the community was dissolved by divorce.

II. Whether the conveyances of real property by Abe and Lillian Abraham to Susan Ayesh were fraudulent as to FNBIA's rights as a creditor.

Abe Abraham and Lillian Abraham were married at the time they moved to Albuquerque in 1975. Abe Abraham operated an Indian jewelry store in Albuquerque for about four years. Susan Ayesh moved to Albuquerque in 1979; she is Abe Abraham's sister.

On November 13, 1978, Abe Abraham executed a promissory note to FNBIA for $31,775.32. The note was renewed on May 29, 1979, and renewed again on October 15, 1979. The renewal notes contained a different rate of interest than the original note. No payments were ever made on the October renewal. The notes and renewals were signed only by Abe Abraham. Lillian was not aware of the change in interest, nor did she consent to the change. Abe Abraham and Lillian Abraham were married at the time of the May renewal, but were divorced by the time of the October renewal. Under the divorce decree, Abe Abraham retained all real property he had acquired in New Mexico, while Lillian Abraham retained a home purchased in Michigan.

In December 1979, Abe Abraham quitclaimed his interest in North Albuquerque Acres to Susan Ayesh, and Abe and Lillian Abraham together quitclaimed their interest in their former family residence in Albuquerque, also to Susan Ayesh. These properties were transferred to Susan Ayesh in return for a $37,000 cash loan made by Susan Ayesh to Abe Abraham during a time that Abe Abraham was having financial difficulties following an armed robbery of his jewelry store.

### I. Community Debt.

The general rule is that a debt contracted for during marriage is presumptively a community debt and the burden of showing otherwise is on the party so asserting. Malcolm v. Malcolm, 75 N.M. 566, 408 P.2d 143 (1965); Strong v. Eakin, 11 N.M. 107, 66 P. 539 (1901). Unless Lillian Abraham rebuts the presumption, she is also liable for the indebtedness.

The money advanced to Abe Abraham by FNBIA and represented initially by the note of November 13, 1978, was to be used by Abe Abraham in his jewelry business. The debt for materials bought by a spouse for use in that spouse's business is a community debt. Id. The November 1978 note was renewed in May 1979 and again on October 1979.

FNBIA claims that the transactions of May and October 1979 constituted mere extensions of the original note and that a

renewal note, absent an agreement to the contrary, does not extinguish the initial debt. Lillian Abraham, on the other hand, contends that the subsequent renewal transactions of May and October 1979 constituted new contracts because they provided a different rate of interest than the original note. Lillian Abraham also asserts that because she and Abe Abraham were divorced at the time of the October 1979 transaction, she is not bound by the contract entered into by Abe Abraham and FNBIA at that time.

■ Before proceeding further, this Court must resolve a preliminary issue. FNBIA claims that the issue of whether the October 1979 transaction represented a material change in the original contract or became a new contract, is raised for the first time on appeal and cannot be considered by the Court at this time. However, the record reflects no doubt about the issue having been presented in the trial court. It is undisputed that the Abrahams were divorced prior to the October 1979 renewal. In addition, the notes were introduced as exhibits, and they indicated the differences in the amount of interest rates charged in the renewal notes of May and October 1979. There are numerous cases in this and other jurisdictions which hold that an appellate court may sustain a judgment of a trial court for reasons other than those relied upon by the trial court. The case of *Thomas v. Gardner*, 75 N.M. 371, 404 P.2d 853 (1965), held that even though the trial court based its decision upon other grounds, the judgment will be affirmed if it can be sustained upon correct legal principles. Similarly, *Scott v. Murphy Corporation*, 79 N.M. 697, 448 P.2d 803 (1968), held that the trial court will be upheld if it is right for any reason. This issue is properly before us on appeal.

■ As applied to a note, the term "renewal" means the re-establishment of a contract evidenced by the note for another period of time. 11 Am.Jur.2d *Bills and Notes* § 307 (1963). The Court in *Bank v. McClellan*, 9 N.M. 636, 58 P. 347 (1899), relied on by FNBIA, characterized a renew-

al as "a mere change of notes from time to time, which evidences the same indebtedness ...." *Id.* at 644, 58 P. at 349. FNBIA is correct when it argues that a renewal note, absent an agreement to the contrary, does not extinguish the initial debt. *See, e.g., Easton v. Ash*, 18 Cal.2d 530, 116 P.2d 433 (1941). However, a party to a note may be discharged on his obligation if a material alteration is made in the renewal without his consent. *See Ruby v. Talbott*, 5 N.M. 251, 21 P. 72 (1889). A material alteration of an instrument is one that changes the legal effect of that instrument. *E.g., Fitzgerald v. Lawson*, 96 N.H. 447, 78 A.2d 527 (1951). Rate of interest is a material term in a contract. *See, e.g., Belt v. Stover*, 157 Okl. 176, 11 P.2d 519 (1932).

■ Although the prior notes of November 1978 and May 1979, signed by Abe Abraham alone, were binding on Lillian Abraham under community property law, Lillian was not liable on the renewal note of October 1979. The record shows that the renewal note of October 1979 was executed by FNBIA and Abe Abraham only. Interest provided for in the May 1979 note was 10.5%. The rate of interest provided for in the October 1979 note was 13%. Rate of interest was a material change from prior notes and a new indebtedness resulted. We hold that this new indebtedness could not bind Lillian Abraham without her signature or consent, since it arose after her divorce from Abe Abraham.

II. *Fraudulent Conveyance.*

■ The law of fraudulent conveyances in this jurisdiction is governed by Sections 56–10–1 through 56–10–13, N.M.S.A.1978, known as the Uniform Fraudulent Conveyance Act (Act). The Act protects creditors where a debtor has made a conveyance of his property which diminishes his assets to the prejudice of the rights of his creditors. Prejudice to the rights of creditors is presumed, regardless of a debtor's intent to defraud, under Section 56–10–4. Under this section, a creditor may prove constructive fraud by proof that a convey-

292

ance was made by a debtor "who is or will be . . . rendered insolvent . . . [and] if the conveyance is made . . . without a fair consideration." Proof of fraud in a civil action must be established by clear and convincing evidence. *See Lumpkins v. McPhee*, 59 N.M. 442, 286 P.2d 299 (1955) (decided under the common law); *Hutcheson v. Savings Bank of Richmond*, 129 Va. 281, 105 S.E. 677 (1921) (decided under the common law). Allegation and proof of the commonly accepted badges of fraud can also be used to show actual fraud under Section 56–10–7. *See American Cas. Co. of Reading, Pa. v. Line Materials Indus.*, 332 F.2d 393 (10th Cir. 1964), *cert. denied*, 379 U.S. 960, 85 S.Ct. 646, 13 L.Ed.2d 555 (1965). A creditor may establish a prima facie case through proof of badges of fraud. *Chesher v. Shafter Lake Clay Co.*, 45 N.M. 419, 115 P.2d 636 (1941).

FNBIA contends that the trial court erred in refusing to find constructive fraud under Section 56–10–4 because Abe and Lillian Abraham transferred property purportedly worth $177,000 to Susan Ayesh for an alleged debt of $37,000, and further, because Abe Abraham was rendered insolvent by that transfer at the time he made it.

■ After reviewing the record, we conclude that although FNBIA has presented a convincing argument as to the lack of fair consideration for the transfer, it has failed to prove by clear and convincing evidence that Abe Abraham was rendered insolvent by the conveyances to Susan Ayesh. Section 56–10–4 clearly requires that both insolvency and lack of fair consideration be proven in order that a debtor's acts amount to fraud upon his creditors.

■ What constitutes fair consideration is addressed in Section 56–10–3. The standards set forth there require that the exchange involve a fair equivalent, or that the value received for the property or interest said to be fraudulently conveyed not be disproportionately small as compared to the value of the property transferred by the debtor. FNBIA claims that there was no fair consideration for the transfer of the

debtor's property because the current market value of the transferred property, $310,000 less $133,000 in mortgages, left an equity of $177,000, and Abraham only received $37,000 from Abraham's sister for the property. We agree that the current market value of the property is the true indication of its value for purposes of determining whether there existed fair consideration for the transfer. Under the facts in this case, we conclude that there was a lack of fair consideration in the conveyances from Abe and Lillian Abraham to Susan Ayesh. However, proof of lack of fair consideration is not alone determinative of the issue. All the elements of fraud required by the statute, including insolvency, must be proven by clear and convincing evidence. *See Lumpkins v. McPhee, supra.* The proof presented by FNBIA on the issue of insolvency falls short of the clear and convincing standard. The record shows that, in addition to the parcels conveyed to Susan Ayesh, Abe Abraham's assets at the time of the trial consisted of four parcels of land located in New Mexico plus a life insurance policy with a face value of $10,000. One parcel of land consisting of 276 acres in San Miguel County is subject to a real estate contract. Two parcels of land are located in Taos County, and their value is unclear. The fourth parcel consists of 60 acres located in Bernalillo County. Abe Abraham employed an appraiser who testified that the 60-acre parcel in Bernalillo County had a value of $165,000. There is no evidence in the record which clearly contradicts that appraisal. At most, FNBIA has raised some doubt as to its validity.

The record shows that Abe Abraham was indebted to FNBIA and other creditors in a total amount of approximately $71,000 at the time of the conveyance to Ayesh. The appraisal ($165,000) on the one parcel of land in Bernalillo County alone negates the contention that Abe Abraham was insolvent or was rendered insolvent by the conveyances to Susan Ayesh.

FNBIA cites the case of *Royal Indemnity Company v. McClendon*, 64 N.M. 46, 323 P.2d 1090 (1958). That case holds that

among the commonly recognized badges of fraud are: the insolvency or indebtedness of the debtor, the lack of consideration for the conveyance, the retention by the grantor of possession of the property, the close relationship between the transferor and the transferee, and the threat or pendency of litigation. We have no quarrel with the principles announced in *McClendon*. Nonetheless, the record as a whole in this case supports the trial court's result that neither actual nor constructive fraud was proven by clear and convincing evidence.

The judgment of the trial court is affirmed.

SOSA, Senior Justice, and PAYNE, J., concur.