723 P.2d 965

**WESTERN PRODUCTION CREDIT ASSOCIATION, a corporation, Plaintiff-Appellant,**

v.

**Doyle KEAR and Jean Kear, husband and wife, et al., Defendants-Appellees.**

No. 16245.

Supreme Court of New Mexico.

Aug. 12, 1986.

Paul A. Kastler, Raton, for plaintiff-appellant.

Charles D. Alsup, Clayton, for defendants-appellees.

## OPINION

WALTERS, Justice.

Plaintiff-appellant Western Production Credit Association ("Western") filed suit, as a judgment creditor, against defendants-appellees Doyle and Jean Kear to set aside two conveyances of land made by defendants. Western alleged that on February 17, 1983, the Grandview Ranch Partnership (through Doyle Kear) and Doyle and Jean Kear, by two deeds, fraudently conveyed all 1275 acres owned by them to Jean Kear's brother and to the Kears' two sons in an attempt to delay, hinder and prevent collection of the Kears' obligation to Western.

Following a non-jury trial, the trial court entered its decision with findings and conclusions included therein, and dismissed Western's complaint with prejudice. We reverse. The issue on appeal is whether there is substantial evidence to support the findings challenged by Western. If unsupported, the conclusions leading to dismissal must also fall.

The trial court found that the conveyances were made for less than fair consideration, but concluded that they were made under a theory of honest and fair dealing rather than with actual intent to prejudice or defraud creditors, and that the Kears were not rendered insolvent or near-insolvent by the conveyances. Western argues that the conveyances constituted constructive fraud under NMSA 1978, Section 56–10–4 (Repl.Pamp.1986), and actual fraud under NMSA 1978, Section 56–10–7 (Repl. Pamp.1986), contending that proof under either section is sufficient to render the

conveyances fraudulent and requiring that they be set aside. It cites *First National Bank v. Abraham,* 97 N.M. 288, 639 P.2d 575 (1982), to support its argument. We agree with Western.

■ Under Section 56–10–4, a conveyance is fraudulent without regard to actual intent, if the conveyance is made without fair consideration, and insolvency exists or results therefrom. Since the trial court found there was not adequate consideration for the conveyances, the inquiry to determine the claim of constructive fraud (§ 56–10–4) then focuses on whether defendants were rendered insolvent by the conveyances. Insolvency is defined in Section 56–10–2 as the condition of one "when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." As of February 17, 1983, defendants' debt to Western was absolute and matured.

The February 17th transfers rendered defendants insolvent. In concluding that the Kears were not insolvent on that day, after the conveyances, the trial court erred in determining the number and value of cattle then owned by defendants, thus overstating their assets in its findings. The error occurred when the trial judge relied upon answers given by a witness to hypothetical questions based upon the witness's opinion, rather than upon documented evidence of fair market value and prior sales of some of the cattle.

■ Additionally, the evidence was not only substantial but clear and convincing that defendants had an actual intent to defraud within Section 56–10–7. Each of the "commonly accepted badges of fraud" *i.e.,* lack of fair consideration, retention of possession of the property by the grantors, the close relationship between the transferors and transferees, and the threat or pendency of litigation, was present. *Abraham* at 293, 639 P.2d at 580. The trial court's contrary conclusion that the conveyances were not fraudulent "within the meaning of NMSA 1978, Chapter 56, Article 10,"

simply cannot be reconciled with the undisputed existence of those "badges of fraud" facts.

■ The claim by defendants of "forced sales" of the cattle during February-through-April 1983 snowstorms, as a means of partially satisfying their debt to Western, was an affirmative defense that was not pled. Therefore, the evidence presented on it should have been excluded and Western's objections to it sustained. Defendants did not request that the trial court consider the pleadings amended to conform to the evidence. NMSA 1978, Civ. P.Rule 15(b) (Repl.Pamp.1980). Further, this claim was raised and litigated in an earlier suit on the note and the doctrine of collateral estoppel should have barred relitigation. The facts in this case meet the elements for collateral estoppel as set forth in *International Paper Co. v. Farrar,* 102 N.M. 739, 700 P.2d 642 (1985).

Finally, the issue of "forced sales" was specious. The Kears' debt to Western was due and payable in September 1982. It is simply unrealistic and inappropriate for a debtor to attempt to impose blame for unfavorable market conditions upon a creditor whose account is to be satisfied or credited from the proceeds of sale. The timing of the sales here was solely within the discretion of the Kears. It is significant that the land transfers were made before any "snowstorm" sales were attempted, and that both the transfers and the sales occurred long after the debt to Western became due.

The judgment of the trial court is reversed and the cause remanded for entry of order of foreclosure of judgment lien against the Kears and their transferees, and for such further proceedings as may be appropriate.

IT IS SO ORDERED.

FEDERICI and STOWERS, JJ., concur.