724 P.2d 752

ALLIED PRODUCTS CORP., et al.,
Plaintiffs-Appellants,

v.

ARROW FREIGHTWAYS, INC., et al.,
Defendants-Appellees,

and

PACIFIC AMERICAN LEASING COR-
PORATION, Plaintiff-Appellant,

v.

ARROW FREIGHTWAYS, INC., and Ha-
rold O. Volden, Defendants-Appellees,

and

MID-CONTINENT SYSTEMS, INC.,
Plaintiff-Appellant,

v.

ARROW FREIGHTWAYS, INC.,
Defendants-Appellees,

and

First City National Bank, now known
as Moncor Bank,
Defendant/Garnishee-Appellee.

No. 15623.

Supreme Court of New Mexico.

Sept. 3, 1986.

Rehearing Denied Sept. 26, 1986.

Louis J. Vener, Albuquerque, for Allied Products Corp.

Shaffer, Butt, Thornton & Baehr, John S. Stiff, Albuquerque, for defendant/garnishee-appellee Moncor Bank.

Eaves & Darling, Peter F. Lindborg, Albuquerque, for defendant-appellee Harold O. Volden.

## OPINION

SOSA, Senior Justice.

Plaintiffs are judgment creditors of Arrow Freightways, Inc. (Arrow). They filed suit to void or subordinate to their claims a series of transactions by which defendants Ethel and Harold O. Volden (Voldens) exchanged their stock in Arrow for a security interest in all the assets of the corporation, which Voldens subsequently repossessed and liquidated. After trial, the court dismissed the claims against Voldens. Plaintiffs appeal to this Court. We affirm.

Plaintiffs raise a multitude of issues, which we combine into three categories:

I. Whether Voldens are liable to plaintiffs because of Arrow's failure to file certificates of cancellation with the State Corporation Commission;

II. Whether the disputed contracts violated the Uniform Fraudulent Conveyance Act; and

III. Whether the conveyances were so unconscionable as to be set aside under the exercise of the court's equitable powers.

## FACTS:

Arrow had been in the trucking business in Albuquerque since 1966, owned originally by the Voldens and the Boyds. In March 1982, Arrow redeemed the Boyds' 45% interest for $500,000, leaving Voldens as sole owners.

At age 65 and contemplating retirement, Harold Volden entered into negotiations to sell Arrow to R. Joe Ward and his wife Diana G. Ward (Wards). Joe Ward had twenty years' experience in the trucking business. On April 1, 1982, Jack Yeager, Arrow's treasurer, prepared a balance sheet, based on appraisals by third parties of the fair market value of Arrow's equipment and real estate, showing a total net worth of $1,637,934.

Both Voldens and Wards were represented by counsel when they signed the agreements at issue here on July 29, 1982. The first transaction was a sale from Voldens to Wards of 366.667 shares in Arrow for $366,667, with $40,000 cash as a down payment and the remainder by promissory note, guaranteed by Arrow. Secondly, Arrow agreed to redeem the remaining 733.-333 shares from Voldens. Arrow executed a promissory note to Voldens to pay the debt in equal monthly installments for 10 years, with no down payment. This note was guaranteed by Wards individually, and secured by liens on Arrow's equipment and a second mortgage on Arrow's real property. Arrow did not file with the State Corporation Commission a statement of cancellation of its shares. Furthermore, Arrow released Voldens of a debt of $161,678.13. Finally, Wards agreed to inject $39,000 of their own capital into Arrow immediately.

Joe Ward operated Arrow for nearly one year, during which time he injected into it approximately $100,000 of his own money, personally guaranteed some $250,000 of its debts to third-party creditors, successfully re-negotiated one debt of $75,000 and doubled Arrow's gross receipts. Nevertheless, Ward was unable to continue the payments to Voldens and defaulted on July 15, 1983. Voldens sold Arrow's equipment at an auction on September 14, 1983. The gross

proceeds from this and other sales of Arrow equipment totaled $897,360.50. Net proceeds to Voldens came to $473,267.67. During Wards' ownership, Voldens received on their promissory notes a total of $202,918, of which $61,111.10 was principal.

Plaintiff Pacific American Leasing Corporation (Pacific) was a creditor of Arrow prior to July 29, 1982. Plaintiff Mid-Continent Systems, Inc. (Mid-Continent) was a creditor prior to July 29, 1982, but the account was twice paid off by Ward. Plaintiff Crane Services, Inc. (Crane) was a creditor of Arrow on July 29, 1982, whose account was partly paid by Wards. Plaintiff Duke City Travel is not a creditor of Arrow. The other three plaintiffs extended credit to Arrow only after July 29, 1982.

From proceeds from the auction of its security, Pacific satisfied roughly half of its judgment against Arrow. Based on its judgment, Pacific garnished funds held by defendant, First City National Bank (Bank), in the name of Voldens. Likewise, Mid-Continent obtained a judgment against Arrow, then proceeded to garnish and execute upon funds held by the Bank in the name of Voldens. The parties have stipulated that the remaining plaintiffs are creditors entitled to judgments against Arrow.

All of the actions were consolidated. The Bank moved to dismiss the writs of garnishment. After trial, the court entered judgment for Plaintiffs against Arrow, but not against Voldens, dismissing with prejudice Plaintiffs' claims based on the New Mexico Uniform Fraudulent Conveyance Act. NMSA 1978, §§ 56–10–1 to 56–10–13 (Repl.Pamp.1986) (Act). From that dismissal Plaintiffs appeal to this Court.

## I. Failure to file certificates of cancellation.

Plaintiffs contend that Voldens are liable to creditors for their failure to file a statement of cancellation, as was required by statute. Clearly such a filing was mandatory in 1982:

A. When redeemable shares of a corporation are redeemed or purchased by the corporation, the redemption or purchase shall effect a cancellation of the shares, and a statement of cancellation shall be filed as provided in this section....

NMSA 1978, § 53–13–10(A) (Orig.Pamp.) (repealed 1983).

Our inquiry does not end here, however. While the transaction from Voldens to Ward did in fact effect a cancellation of shares, it does not necessarily follow that Voldens are thereby liable, for two reasons.

First, the statute requires that a statement shall be filed; it does not say by whom. Indeed, plaintiffs, and the authorities they cite, speak of the duty falling upon the corporation. Thus, even accepting the contention that the duty arose while Voldens still controlled Arrow, we cannot conclude that it was therefore a personal, rather than a corporate, duty.

Secondly, plaintiff's statutory interpretation rests upon the somewhat outmoded theory (discussed in more detail in Part III, below) that the capital of a corporation is held in trust for the creditors. Under such a theory the purpose of filing a certificate is to give notice to creditors that the corporation's capital has been reduced. We agree with Voldens, though, that a more useful form of notice was given to the world by recording with the Bernalillo County Clerk the security agreements, financing statements and purchase money mortgage by which the debts from Wards and Arrow to Voldens were secured.

Moreover, we do not agree with plaintiffs that they are among the principal intended beneficiaries of the statutory requirement. In fact our statute was repealed, 1983 N.M.Laws, ch. 304, while Wards were in control of Arrow. The statute itself is silent on the question of liability for its violation. Thus, it is distinguishable from its New Jersey counterpart which has been held to require reimbursement from stockholders to creditors. *Kleinberg v. Schwartz*, 87 N.J.Super. 216, 218, 208 A.2d 803, 805 (1965) (citing N.J. Rev.Stat. § 14:11–5).

Plaintiffs argue by analogy that a remedy is provided in NMSA 1978, Section 53–

11–46 (Repl.Pamp.1983), which imposes liability upon the directors of a corporation, under certain circumstances. That liability, however, is to the corporation, enforceable by its shareholders via derivative suit, not to creditors. Having considered the foregoing, the trial court correctly determined that no liability of Voldens to plaintiffs arose from failure to file the notice of cancellation.

## II. The Uniform Fraudulent Conveyance Act.

Plaintiffs invoke three separate statutory sections in support of their argument to invalidate the transactions by which Voldens became secured creditors instead of stockholders in Arrow. This Court has stated that: "The Act protects creditors where a debtor has made a conveyance of his property which diminishes his assets to the prejudice of the rights of his creditors." *First National Bank in Albuquerque v. Abraham,* 97 N.M. 288, 291, 639 P.2d 575, 578 (1982). The statute permits a plaintiff to prove actual or constructive fraud, but such proof must be established by clear and convincing evidence, *Id.* at 292, 639 P.2d at 579. We turn now to see whether the trial court erred in concluding that plaintiffs failed to carry their burden, according to the three pertinent statutory sections, NMSA 1978, §§ 56–10–4, 10–5, and 10–7 (Repl.Pamp.1986).

### A. Section 56–10–4

Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

This language clearly requires proof of both insolvency and lack of consideration. *First National Bank,* 97 N.M. at 292, 639 P.2d at 579. The trial court concluded as a matter of law that Arrow was not insolvent before or immediately after the July 29, 1982 transactions and that Arrow received fair consideration for its debt to Voldens.

Plaintiffs challenge these conclusions, but not the findings of fact upon which they are premised. If there is substantial evidence in the record to support the findings of fact, then the conclusions of law must be sustained, unless the trial court has abused its discretion. *Albuquerque National Bank v. Albuquerque Ranch Estates, Inc.,* 99 N.M. 95, 106, 654 P.2d 548, 559 (1982).

### 1. Insolvency

■ This Court has established the propriety of the "balance sheet" test for insolvency. *First National Bank,* 97 N.M. at 292, 639 P.2d at 579. Here the trial court found that Arrow had a net worth in April, 1982 of $1,637,934. Subtracting the $1,000,000 debt to Voldens left a net worth of $537,934. Plaintiffs contend instead that the fair market value of Arrow's assets was close to the $879,360.50 gross proceeds from the auction sale. The court found, however, that the auction, due to its "forced sale" nature whose terms were "without reserve," did not reflect the fair salable value of Arrow's assets at the time of their transfer to Wards. Substantial evidence supports the finding that Arrow was not insolvent.

### 2. Consideration

■ Section 56–10–3 of the Act defines consideration as:

A. when in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied; or

B. when such property, or obligation, is received in good faith to secure a present advance or antecedent debt in an amount not disproportionately small as compared with the value of the property or obligation obtained.

Here Arrow and Wards agreed to purchase Voldens' entire interest in the company. The court found no bad faith. We agree that the value of the company is a fair equivalent, not disproportionately small, for the purchase price, although the down payment seems unsubstantial in compari-

son, and although the security interests made future financing difficult, if not impossible, for Wards.

We determine that there exists substantial evidence to support the trial court's conclusion that plaintiffs failed to carry their burden. Conceding that the question of fair consideration is the closer one, it still is only half of what plaintiffs were required to prove.

### B. Section 56–10–5

■ A prima facie showing under this section must include a conveyance made without fair consideration and with the result of "an unreasonably small capital" remaining. Again, plaintiffs failed to make such a showing. Despite the heavy leverage on the transaction, substantial evidence supports a finding of fair consideration. As for the remaining capital, the record reflects that there was uncontradicted testimony precisely on point. Thus, the court's unchallenged finding supports its conclusion that plaintiffs' proof did not prevail.

### C. Section 56–10–7

■ The creditor must prove intent to defraud, or must allege and prove "the commonly accepted badges of fraud." *First National Bank*, 97 N.M. at 292, 639 P.2d at 579. The court below found that the transaction was entered into at arms-length and in good faith by the parties, who were each represented by counsel. Further, the fact that Ward operated the business for nearly a year negates any inference of intent to defraud. Plaintiff simply did not show by clear and convincing evidence enough "badges" to sustain a conclusion of actual or constructive fraud. *Id.* at 293, 639 P.2d at 580. We conclude that the trial court did not abuse its discretion in dismissing plaintiffs' statutory cause of action.

### III. Unconscionability.

Plaintiffs rely upon equitable subordination established at common law and upon the trust fund doctrine. We agree with defendants-appellees, however, that these theories have been effectively subsumed by statute. In order to show that the challenged transactions were "grossly inequitable" to the degree of "shocking the conscience of the court," plaintiffs would have had to prove the same insolvency, lack of fair consideration, or intent to defraud as required by the Act.

It does seem unfair, in retrospect, that Voldens should be permitted to retain all the proceeds of the liquidation, while these plaintiffs go unsatisfied. The leveraged buy-out of Arrow may have shocked the common sense of the trial court; it may indeed seem unwise to members of this Court. Nevertheless, we cannot set aside every contract which we deem to be insensible, only those which are unconscionable.

■ The trial court found that Arrow was not insolvent after the transactions of July 29, 1982, and that Ward was in fact able to operate the business successfully for nearly one year afterwards. These findings are supported by substantial evidence. Therefore the court correctly concluded that not Voldens, but Arrow alone, was liable to plaintiffs for their judgments.

The decision of the trial court is affirmed.

IT IS SO ORDERED.

FEDERICI and WALTERS, JJ., concur.