785 P.2d 740

**SUNWEST BANK OF FARMINGTON, a New Mexico banking corporation, Plaintiff–Appellee,**

v.

**Don KENNEDY, Sharon Kennedy, Edith Kennedy, and Estate of Troy Kennedy, Deceased, and/or the Heirs-at-Law of Troy Kennedy, Defendants–Appellants.**

No. 18124.

Supreme Court of New Mexico.

Jan. 12, 1990.

F.D. Moeller, Farmington, for defendants-appellants.

Tansey, Rosebrough, Gerding & Strother, James B. Payne, Farmington, for plaintiff-appellee.

## OPINION

BACA, Justice.

Defendants Kennedys appeal the district court of San Juan County's grant of summary judgment to plaintiff Sunwest Bank of Farmington (Sunwest). The other defendants to the action have not contested the judgment. We affirm.

FACTS

In September 1982, the Kennedys borrowed $165,000 from Valley Bank, the predecessor of Sunwest, for the use of Kennedy, Inc., a corporation owned by the Kennedys, with its principal asset a car dealership. At the time that the promissory note was issued, in addition to assuming primary liability on the note, the Kennedys each signed an "Unconditional and Continuing Guaranty" with the bank, obligating

them to "pay any and all liabilities, obligations or indebtedness, of any kind or nature" of the corporation.

The original term of the note was one year, although the parties contemplated annual renewals allowing the loan to be repaid over a ten-year period; it was extended twice, in September of 1983, and September of 1984. In December 1984, the Kennedys sold their interest in the corporation to the other defendants in this suit, James Copeland, James Clark, Charlie Craven, and Santex, Inc. Copeland, Clark, and Craven also executed personal guarantees on the payment of the note.

In August 1985, Kennedy, Inc., now doing business as Copeland–Craven Pontiac, Oldsmobile–Nissan, Inc., executed a modification of the note, contemplating a three-year amortization, and, because Copeland and Clark had bought out the interests of Craven and Santex, Inc., Sunwest released Craven from his personal guarantee. These actions were accomplished without notice to the Kennedys.

The note subsequently went into default, leaving an amount owed of $104,730.30. Sunwest then brought this suit to collect.

The issue we consider on this appeal is whether the bank, by releasing Craven from his personal guaranty of the note and by extending the terms of the note without notice to the Kennedys, affected a discharge of the Kennedys' liability on the note.

In determining whether summary judgment was proper, the evidence on appeal is considered in a light most favorable to the party opposing the motion. *Green v. General Accident Ins. Co. of Am.,* 106 N.M. 523, 527, 746 P.2d 152, 156 (1987).

A. *Did Craven and Santex, Inc. Become Co–Makers of the Note by Subsequently Guaranteeing the Indebtedness?*

The Kennedys argue that, by the terms of the "Assumption of Indebtedness" agreement signed by Craven and Santex, Inc., those parties became co-makers or co-debtors with the Kennedys. Thus, they contend that, because Sunwest subsequently released Craven and Santex from their obligation as guarantors, the Kennedys also were released to the extent of their right of contribution.

The Kennedys correctly state the law that such a release by the holder of a note operates to discharge the obligations of subsequent parties and co-debtors who are jointly and severally bound, absent the approval of the maker. *See Wood v. Eminger,* 44 N.M. 636, 641, 107 P.2d 557, 562 (1940). The applicability of this argument, however, is premised upon Craven and Santex being elevated to the status of co-maker or co-debtor.

The Kennedys also correctly define a maker as the party that "engages that he will pay the instrument according to its tenor at the time of his engagement." NMSA 1978, § 55–3–413(1). In accordance with this definition, the Kennedys contend that Copeland and Craven, when they assumed the indebtedness, became makers by agreeing to be co-equal with the Kennedys. They argue that Copeland and Craven specifically agreed to become liable "as if the Transferee had executed such instruments as of the dates thereof as the principal obligor[,]" purportedly citing to the record, but without citation. Sunwest, however, has directed our attention to that language in the record. By the "Agreement for Assumption of Indebtedness," Kennedy, Inc. assumed the debt vis-a-vis the Kennedys, as transferee. Neither Craven nor Santex, Inc. were party to this agreement, and neither assumed any liability through it. Additionally, by the terms of the agreement, the Kennedys agreed that the assumption of indebtedness by Kennedy, Inc. did not relieve the Kennedys from personal liability for the debt.

Sunwest also directs our attention to the "Contract of Sale," in which Craven and Santex, Inc. agreed *with the Kennedys* to take over payment of the loan. However, this agreement is between, *inter alia,* the Kennedys, Craven, and Santex. Sunwest was not party to this agreement. Thus, although the contract may give rise to a cause of action between the Kennedys, Craven, and Santex, Inc., it has no effect on

the Kennedys' obligations vis-a-vis Sunwest.

■ It is apparent, therefore, that the Kennedys' argument that Craven and Santex were co-makers fails. Although Craven did sign a personal guarantee of the loan, and both parties executed the "Contract of Sale" with the Kennedys, they did not assume by these actions primary liability for the note. Because Craven was not a co-maker but merely a subsequent guarantor, it is equally apparent that Sunwest's release of their obligations is irrelevant to the Kennedys' on-going liability. The cited authority states that a release discharges subsequent parties; the Kennedys did not undertake their obligation contemplating Craven's participation, and none of the cited authority, and indeed none that our research disclosed, indicates that the release of subsequent obligors relieves earlier obligors from responsibility.

B. *Did Sunwest Materially Alter the Kennedys' Obligation Without Consent?*

■ The Kennedys argue that Sunwest, by releasing co-guarantors and by extending the time period for payment of the note, materially altered the terms of the note without consent, thus discharging the Kennedys' obligation. *See First Nat'l Bank in Albuquerque v. Abraham*, 97 N.M. 288, 291, 639 P.2d 575, 578 (1982) ("[A] party to a note may be discharged on his obligation if · a material alteration is made in the renewal without his consent."); *see also* NMSA 1978, § 55–3–606; *Western Bank v. Aqua Leisure, Ltd.*, 105 N.M. 756, 757, 737 P.2d 537, 538 (1987). As already discussed, Craven was a subsequent guarantor, and his guaranty ran only to Sunwest; his release could not affect the Kennedys' rights.

The Kennedys contend that they did not sign as co-makers and that therefore the language in the note stating: "If I'm signing this Note as comaker, I agree to be equally responsible with the borrower * * *. You may extend or change the terms of payment and release any security without notifying me or releasing me from

my responsibility on this Note[,]" is not applicable to them and does not signify their consent to an extension. However, they did sign personal guaranties, stating in part: "[Sunwest] may from time to time and without affecting or impairing Guarantors' liability hereunder * * * modify or amend any * * * and all of the collateral, security, guarantees, documents and instruments evidencing the Guaranteed Obligations * * *." Most significantly, the Kennedys signed the original note as makers. They received the benefits of the original obligation and undertook an obligation to repay the note. *See* NMSA 1978, § 55–3–413(1). Additionally, in transferring the debt from the Kennedys to Kennedy, Inc., pursuant to NMSA 1978, § 55–3–603(2), and with Sunwest's consent, the Kennedys agreed that their personal liability—their liability as the makers of the note—to repay the indebtedness remained unaltered. Their liability as makers to repay was absolute.

The Kennedys maintain that, notwithstanding their status as makers and their obligations pursuant to their personal guarantees and their agreement, in the transfer, to continuing personal liability, they never consented to the extension of the note. They contend that, although they consented to modification or amendment, they did not consent to an extension, which they conclude is a term of art not synonymous with modification or amendment.

■ We find, however, that this argument is without merit. The parties to the original note contemplated continuing modification of the note over a ten-year period. Furthermore, the Kennedys' status as makers, and not as accommodation parties or sureties, seals their fate. Although a surety or accommodation party to a note may be discharged when the holder unauthorizedly grants an extension, *see* NMSA 1978, § 55–3–606(1), and Official Comment 1; J. White and R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 524–25 (2d ed. 1980), the maker of the note does not have this defense available. *See, e.g., F.D.I.C. v. Blue Rock Shopping Center, Inc.*, 766 F.2d 744 (3d Cir.1985);

*United Am. Life Ins. Co. v. Perillo,* 462 F.2d 254 (9th Cir.), *cert. denied,* 409 U.S. 1008, 93 S.Ct. 442, 34 L.Ed.2d 301 (1972); *Toomey v. Cammack,* 345 A.2d 453 (D.C. 1975); *Wohlhuter v. St. Charles Lumber & Fuel Co.,* 62 Ill.2d 16, 338 N.E.2d 179 (1975) (holding co-makers liable on note despite subsequent sale of corporate assets and bank having misfiled security agreement thereby losing interest in collateral); *Commerce Union Bank v. May,* 503 S.W.2d 112 (Tenn.1973) (despite subsequent transferee's failure to insure building against fire as required and without maker's consent, maker liable for note).[1] The Kennedys, as makers, remain primarily liable on the note, and, although they undoubtedly have recourse against the other parties to the note by virtue of the contract of sale, they have no defense against Sunwest's claim.

The Kennedys nevertheless maintain that *Abraham* states that "a party to a note may be discharged * * * if a material alteration is made in the renewal without his consent." 97 N.M. at 291, 639 P.2d at 578. They contend that, because they gave no consent to the extension, they must be discharged. We note the permissive language used in *Abraham* and the factual posture of that case, which involved a renewal rather than a mere extension, where it was not evident that the parties intended extensions from the totality of the circumstances, and where indices of fraud were evident. By contrasting the facts of *Abraham* with the facts presented to us today, it is apparent that the Kennedys intended that the note would be renewed and that they participated in the transactions regarding the note with full awareness of their on-going liability.

Thus, in light of the Kennedys' agreement to remain personally liable as makers, we hold that the district court did not err in granting summary judgment, and we AFFIRM.

IT IS SO ORDERED.

SOSA, C.J., and WILSON, J., concur.

1. The Kennedys have not argued that by virtue of the sale of the dealership and subsequent assumption of their debt by Kennedy, Inc., the corporation became primary obligor and the Kennedys became sureties as a matter of law, and therefore the significance of their express consent to continuing liability on this possible change of status and the possibility of invoking the suretyship defenses under NMSA 1978, Section 55-3-606 need not be considered. *Cf. Westinghouse Credit Corp. v. Wolfer,* 10 Cal.App.3d 63, 88 Cal.Rptr. 654 (1970); *Smiley v. Wheeler,* 602 P.2d 209 (Okla.1979); *Twombley v. Wulk,* 258 Or. 188, 482 P.2d 166 (1971); *Hemenway v. Miller,* 55 Wash.App. 86, 776 P.2d 710, *review granted,* —— Wash. ——, 781 P.2d 1323 (1989).