This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**J. PATRICK MURPHY,**

     Plaintiff-Appellant,

v.                                  **NO. 28,176**

**CATHARINE KINCAID, M.D., and
IRON EAGLE, INC., a New Mexico
corporation formerly known as
MED EXPRESS CORPORATION,**

     Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Ted C. Baca, District Judge**

Keleher & McLeod, P. A.
Thomas C. Bird
Benjamin F. Feuchter
Albuquerque, NM

Anthony B. Jeffries
Albuquerque, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P. A.
Robert M. St. John
Albuquerque, NM

for Appellees

**GARCIA, Judge.**

This case arises under the New Mexico Uniform Fraudulent Transfer Act (UFTA), NMSA 1978, §§ 56-10-14 to -25 (1989). The district court determined that Defendant, Personnel Research, Inc. (PRI, also known as Professional Medical Staffing Associates or PMSA), and Defendant, Catharine Kincaid, M.D., did not fraudulently transfer some or all of PRI's assets to Kincaid or to Defendant, Med Express Corporation (Med Express). We conclude that the district court did not err in its determinations as the fact finder in the case, and we affirm.

**BACKGROUND**

Plaintiff, J. Patrick Murphy, operated PRI, a temporary medical staffing company that provided medical staff to various health care providers on a short-term basis. On March 6, 2001, Plaintiff sold his majority interest in PRI to Cathy Davis, a PRI employee who already owned the remaining 49% interest, and two other investors, Norah Walsh, M.D. and William McConnell, M.D., through a stock redemption agreement. As part of the sale, PRI executed a promissory note for $1,150,000 payable to Plaintiff in monthly installments of $17,639.02. There was evidence that the sale price for Plaintiff's stock was too high, but neither PRI nor

2

Davis ever initiated any legal proceedings to attack the validity of the stock redemption agreement.

Davis entered into a series of business decisions that ultimately proved to be financially unfavorable to PRI, including the opening of an office in Dallas, Texas. She also entered into a payroll services agreement with Advance Payroll Funding, Ltd. (Advance Payroll), which included a factoring arrangement whereby Advance Payroll made loans to PRI secured by PRI's accounts receivable and received a 40% interest charge on the money advanced. Davis ceased involvement with PRI by January 30, 2003, when she was no longer an officer of the company. Due to the poor business decisions of, and possible malfeasance by Davis, PRI was insolvent by December 31, 2002; it could not meet its debts as they came due, including the monthly $17,639 payment on Plaintiff's note. Furthermore, the value of its receivables, all pledged to Advance Payroll, was less than the amount PRI owed to Advance Payroll.

PRI had paid approximately $350,000 on Plaintiff's promissory note but failed to pay the December 2002 payment. On February 25, 2003, Plaintiff sued Davis and PRI for judgment on the note, to recover Davis' guarantee, and to void the three-year non-compete agreement that Plaintiff had entered into as part of the redemption of his stock.

Kincaid first became involved with PRI as a locum tenens doctor, and later

3

became PRI's medical director around the summer of 2002. She initially purchased stock in PRI in December 2001 for $50,000, and provided limited consulting services to assist Davis in hiring physicians for PRI's expansion office in Dallas. Kincaid was also involved with the investigation of PRI's poor financial performance in November 2002. She and Walsh loaned money to PRI during 2002 so that it could continue to operate; Walsh loaned $170,000, and Kincaid loaned $20,000. Kincaid became a member of PRI's board of directors at some time prior to January 2003.

Kincaid and the remaining two directors, Walsh and McConnell, resigned from the board on January 16, 2003. Despite resigning, Kincaid assumed all managerial duties and responsibilities of PRI and continued to operate and manage the company, including holding herself out as PRI's president in a loan application dated February 5, 2003. Kincaid personally paid some of PRI's operating expenses in an attempt to keep the business running.

During this time, Plaintiff was in contact with Kincaid and knew of PRI's financial distress. Kincaid, as a member of the PRI board of directors, made an offer to Plaintiff to take over a portion of PRI's business operations, but Plaintiff refused.

On March 24, 2003, PRI transferred and assigned corporate assets to Denise Baldwin in exchange for $750. The assignment of assets was made "free and clear of any lien, encumbrance, adverse claim or interest by any third party" and included "all

4

right[s], title and interest in" the "attached inventory list of real property." The real property included furniture and supplies located in five rooms including office furniture, file cabinets, Christmas decorations, office supplies including stationary, a computer, a printer, and computer software including "COATS Program, Windows 98 and 2000 [and] Windows Office." Kincaid incorporated Med Express on May 8, 2003. On May 21, 2003 and on behalf of Med Express, Kincaid issued a personal check to Baldwin for $750 to buy all of the assets, except for a fish tank.

On June 30, 2003, PRI ceased operating. The next day, Med Express, began operating as a consulting and temporary medical staffing company. Med Express serviced a number of the same accounts that were serviced by PRI using the same medical personnel. Med Express subsequently changed its name to Iron Eagle, Inc. References to Med Express herein are interchangeable with and include Iron Eagle, Inc.

Plaintiff sued Davis, Kincaid, Walsh, PRI, and Iron Eagle, Inc., formerly known as Med Express, as defendants. He requested a judgment on the promissory note, and he asserted a number of claims including but not limited to breach of fiduciary duty, conspiracy, constructive fraud, and a claim of fraudulent transfer pursuant to UFTA. In addition, Plaintiff requested an injunction and appointment of a receiver. Defendants Kincaid and Med Express filed a motion to dismiss, which was granted

5

in part, whereby all of the counts were dismissed except Plaintiff's claims for judgment on the promissory note, violations of UFTA, and breach of fiduciary duty as against Kincaid.

All claims against Walsh were dismissed and trial proceeded against Kincaid, PRI, and Med Express. There was a significant amount of testimony offered on both sides regarding PRI's financial history, the sale by Plaintiff of his majority share of the company to Davis in 2001 for $1,150,000, and whether the sale price was justified based upon the financial condition of the company at the time of the sale. The district court entered a number of findings on this latter issue. However, other than providing some clarifying background information that is potentially useful in determining the value of the assets at the point of any allegedly wrongful transfer by PRI, the issue of whether Plaintiff sold his interest in PRI for an inflated price is not an issue for determination on appeal. The district court did not indicate the extent, if any, that these facts influenced its determinations in the case, and we will not consider them in our analysis and determinations.

After a bench trial, the district court entered judgment on the note against PRI. It found in favor of Kincaid and Med Express (Defendants) on the UFTA claim and found that Kincaid did not owe a fiduciary duty to PRI's creditors including Plaintiff. Plaintiff appealed the district court's decision.

## DISCUSSION

## I.       Fraudulent Transfer of Assets

## Waiver

Initially, we reject Defendants' contention that Plaintiff waived his challenge to the district court's findings because he failed to specifically challenge each finding by number in his brief in chief. *See* Rule 12-213(A)(4) NMRA (specifying that an appellant must specifically attack a finding or that "finding shall be deemed conclusive"). The district court entered a number of findings that are not essential to Plaintiff's appeal or this Court's analysis because they only address issues such as whether PRI's debt to Plaintiff was fair and justified and the details of how PRI became insolvent.

In his brief in chief, Plaintiff specifically challenges findings of fact numbers 64, 80, and 81 and conclusions of law numbers 2, 4, 7, 10, 11, 12, and 13. Factual finding 81 is at the core of this appeal because it is the district court's findings that Plaintiff was not damaged by Kincaid's actions. Conclusion of law number 10 summarizes Plaintiff's central contention under the UFTA as it states in part that "[t]here was no fraudulent or unlawful transfer of assets of PRI to either Catharine Kincaid or to Iron Eagle, Inc." Finally, conclusion of law number 4 is central to Plaintiff's breach of fiduciary duty claim because the district court concluded that

7

Kincaid never assumed or had any fiduciary obligation to Plaintiff by reason of being a shareholder or a director of PRI or by reason of her activities in managing the business of PRI for several months prior to June 30, 2003. Based upon the specific findings and conclusions challenged by Plaintiff, it is clear that the critical issues were adequately raised and preserved for appeal. *See Tanuz v. Carlberg*, 1996-NMCA-076, ¶¶ 1, 8, 122 N.M. 113, 921 P.2d 309 (rejecting the defendant's contention that the plaintiff "waived her challenge to the trial court's findings" because even though the brief did not specify each finding that was being attacked, it was clear the plaintiff was challenging "the ultimate findings of fact regarding strict liability and negligence," the issues central to her malpractice complaint).

We also reject Defendants' contention that Plaintiff failed to adequately summarize all of the evidence introduced in support of the challenged findings. *See* Rule 12-213(A)(3) (requiring the brief in chief to include "a summary of the facts relevant to the issues presented for review [and] . . . the substance of the evidence bearing upon [any challenged] proposition"). In his brief in chief, Plaintiff gives an extensive review of the evidence presented at trial. He summarizes his own testimony, and that of Kincaid, and presents a summary of the testimony of the parties' expert witnesses, Devan Dehoff, Samuel Sacco, and Judith Wagner, including the testimony disputing his claim that the assets were worth $400,000. He also

8

includes the district court's observations as to why Plaintiff's experts might be unreliable or lack credibility.  Therefore, Plaintiff's brief in chief "adequately summarizes the evidence relevant to [the] findings" that he is challenging.  *Tanuz*, 1996-NMCA-076, ¶ 8; *see First Nat'l Bank in Alamogordo v. Cape*, 100 N.M. 525, 527, 673 P.2d 502, 504 (1983) (determining that the appellant's brief in chief was "technically sufficient").

**Fraudulent Transfer Under Section 56-10-19(A)**

Plaintiff argues that the district court erred in concluding that no fraudulent transfer of PRI's assets occurred.  Plaintiff contends he should have been awarded damages under Subsections (A) and (B) of Section 56-10-19 of the UFTA because PRI, through the actions of Kincaid, fraudulently transferred PRI assets to Kincaid and to her new corporation, Med Express.

On appeal, we will affirm findings of fact entered by the district court as long as they are supported by substantial evidence and are sufficient to support the judgment, while we resolve challenges to the district court's legal conclusions by determining whether the law was correctly applied to the facts. *See Sunwest Bank of Albuquerque, N.A. v. Colucci*, 117 N.M. 373, 375, 872 P.2d 346, 348 (1994). "Substantial evidence is that which a reasonable mind accepts as adequate to support a conclusion." *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046, ¶ 12, 140

N.M. 478, 143 P.3d 717 (internal quotation marks and citation omitted). We view the evidence "in the light most favorable to the decision below, and we resolve all conflicts and, importantly, indulge in all inferences to support that decision." *Ellen Equip. Corp. v. C.V. Consultants & Assocs.*, 2008-NMCA-057, ¶ 8, 144 N.M. 55, 183 P.3d 940 (alteration omitted) (internal quotation marks and citation omitted).

Under Section 56-10-19(A),

> [a] transfer made . . . by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made . . . if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer[.]

In short, to establish a fraudulent transfer under Section 56-10-19(A), what has been termed a "constructively fraudulent transfer," a pre-existing creditor need only show that the debtor made a transfer for less than a reasonably equivalent value and that the debtor was insolvent at the time of the transfer. *See W. Prod. Credit Ass'n v. Kear*, 104 N.M. 494, 495, 723 P.2d 965, 966 (1986) ("[A] conveyance is fraudulent without regard to actual intent, if the conveyance is made without fair consideration, and insolvency exists or results therefrom."); *First Nat'l Bank in Albuquerque v. Abraham*, 97 N.M. 288, 291-92, 639 P.2d 575, 578-79 (1982) (recognizing constructive fraud under the former Uniform Fraudulent Conveyance Act as a conveyance made by an insolvent debtor without fair consideration). The creditor has the burden to prove

10

with clear and convincing evidence that no reasonably equivalent value was paid for transferred assets. *Allied Prods. Corp. v. Arrow Freightways, Inc.*, 104 N.M. 544, 547, 724 P.2d 752, 755 (1986) (stating that proof of a fraudulent transfer or conveyance must be shown by clear and convincing evidence); *Abraham*, 97 N.M. at 292, 639 P.2d at 579 (indicating that the creditor bears the burden of proof in establishing that a fraudulent conveyance took place); *see Ellen Equip. Corp.*, 2008-NMCA-057, ¶ 20 (holding that the court would not require the purchaser to show that it paid a reasonably equivalent value and holding that the creditor failed to prove that the debtor failed to a receive reasonably equivalent value).

It is undisputed that PRI was insolvent at the time of the transfer. It is also undisputed that PRI transferred a significant portion, if not all, of its assets to Baldwin for $750, and these same assets, minus a fish tank, were bought by Kincaid two months later for $750. Therefore, the central issue at trial was whether $750 constituted a reasonable value for the transferred assets. *See* § 56-10-19(A) (addressing a transfer by an insolvent debtor "without receiving a reasonably equivalent value in exchange"); *cf.* § 56-10-22(B)(2) (stating that a creditor can recover against any subsequent transferee except "a good-faith transferee who took for value").

In an effort to prove that $750 was not a reasonable value for PRI's assets,

Plaintiff presented the expert opinion of Sam Sacco. Sacco relied on reports from Devan Dehoff, a certified public accountant who had worked for PRI in 2002 and in January 2003, to analyze the financial condition of the company. Sacco ultimately valued PRI's assets for June 2003 between $500,000 and $600,000.

The district court found Sacco's and Dehoff's testimony not to be credible, gave detailed reasons for such in its findings of fact, and determined that no fraudulent conveyance occurred. Sacco was hired only six weeks before trial to provide an assessment of the fair market value of PRI as a going concern, but instead Sacco provided an opinion as to the value of the company's assets as of June 30, 2003. Sacco had been given unreliable documents from Dehoff and Plaintiff that he relied upon in forming his valuation of the company. Dehoff ignored conflict of interest principles and agreed to assist Plaintiff's expert, Sacco, even though Dehoff had worked for PRI and PRI directors during 2002 and 2003. Dehoff had prepared two financial reports explaining the general and administrative expenses for the nine months ended December 31, 2002. The first report in January 2003 stated that the expenses were $180,865, and the second report made in preparation for trial stated the expenses were only $90,720. When Dehoff worked for PRI, he concluded that PRI had a negative equity of $1,210,000 and that the company had a net monthly cash loss of $28,000. After being hired by Sacco prior to trial, he found the company to be in

better financial condition. The district court found these contradicting reports, along with Dehoff's explanations regarding the discrepancies, unreliable and not credible. In addition, in a memorandum to Sacco made in preparation for trial, Plaintiff failed to disclose that PRI had a history of losses, and that it had been his opinion in 2003 that the company was in financial distress. The district court ultimately found that Sacco "did not identify, analyze or discuss any comparable companies which he may have considered, he did not take into consideration that PRI was unable to pay its debts, and he made no analysis of the capital structure of PRI and whether it had sufficient capital to remain in business. He provided no data on similar companies against which his opinions could be tested." In conclusion, the district court found that Sacco's investigation was not "sufficient to render a meaningful opinion as to the value of the assets of PRI."

Part of the district court's duty as fact finder in this case was to judge the credibility of the witnesses. *See Evans v. Taxation & Revenue Dep't*, 1996-NMCA-080, ¶ 9, 122 N.M. 216, 922 P.2d 1212 ("A long line of New Mexico cases reserves the determination of witness credibility to the fact finder[.]"). The court was in the best position to judge the credibility of the witnesses, including the opportunity to observe and assess their demeanor. *Id.* ¶ 10. On appeal, we do not reevaluate the credibility of witnesses but instead defer to the district court's determinations. *See*

13

*New Mexicans for Free Enter. v. City of Santa Fe*, 2006-NMCA-007, ¶ 71, 138 N.M. 785, 126 P.3d 1149 (deferring to the district court's findings regarding the credibility of witnesses and discrepancies in testimony); *Tanuz*, 1996-NMCA-076, ¶ 7 ("The trial court, sitting as fact finder, weighs the evidence, determines credibility of testimony, and resolves factual conflicts.").

We conclude that evidence supported the district court's determination in favor of Defendants. Plaintiff had the burden of proof to establish the value of PRI's assets by clear and convincing evidence. *See Ellen Equip. Corp.*, 2008-NMCA-057, ¶¶ 14, 20. Plaintiff failed to meet his burden of proof to establish that $750 was the incorrect value for PRI's assets. Sacco's opinion regarding the value of PRI was found to be unreliable and not credible. Plaintiff did not present any other credible evidence that the district court could have relied on to determine the value of the assets. Furthermore, Defendants' expert, Judith Wagner, testified that she could not form an opinion as to the value of PRI or its assets after December 2002 because the books were in such disarray. The fact finder cannot indulge in speculation regarding the evidence necessary to establish a proper claim. *See Tanuz*, 1996-NMCA-076, ¶ 7 (stating that the district court's findings must be supported by substantial evidence). By not providing the district court with reliable evidence from which to formulate any supportable conclusions about the value of PRI's assets, Plaintiff failed to satisfy his

14

threshold burden of proof to establish that a reasonable equivalent value was not received in exchange for the transferred assets. As a result, Plaintiff failed to prove a fraudulent transfer of those assets under Section 56-10-19(A). *Ellen Equip. Corp.*, 2008-NMCA-057, ¶ 20 (holding that because the plaintiff/creditor had failed to prove that the transferee did not pay a reasonably equivalent value, he failed to make his case under the UFTA).

**Fraudulent Transfer Under Section 56-10-19(B)**

Plaintiff also argues he was entitled to a remedy under Section 56-10-19(B). Section 56-10-19(B) provides,

> A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time and the insider had reasonable cause to believe that the debtor was insolvent.

In order for Plaintiff's claims to survive under Section 56-10-19(B), he had to prove (1) that PRI transferred funds to Kincaid, and (2) that the transfer was for payment on her promissory note.

Although unclear, Plaintiff appears to argue that Kincaid transferred the PRI's assets she received from Baldwin to Med Express, and that such transfers were actually a repayment of PRI's outstanding promissory note to Kincaid. Although PRI's assets were ultimately transferred to Kincaid by Baldwin, the burden was on Plaintiff to establish that this transfer by Baldwin was legally attributable to PRI and

15

the outstanding promissory note. There was no evidence establishing that Kincaid or Med Express received these transferred assets as payment on Kincaid's promissory note. Without any factual link to support these allegations, Plaintiff's arguments rely upon speculation and conjecture. We therefore affirm the district court's denial of Plaintiff's claims under Subsections (A) or (B) of Section 56-10-19 of the UFTA. As a result of our affirmance herein, it is unnecessary to determine whether Plaintiff was entitled to relief in the form of a receiver for Iron Eagle, Inc.

**II.      Breach of Fiduciary Duty and Damages**

Plaintiff contends that the district court erred in refusing to award damages for Kincaid's breach of fiduciary duty. He contends that Kincaid, as manager, director, and president of PRI, had a fiduciary duty to creditors that she breached by engineering a transfer of all PRI's assets to herself directly or through Baldwin, and then to Med Express. The district court disagreed and concluded that Kincaid never assumed or had any fiduciary obligation to Plaintiff by reason of being a shareholder or a director of PRI or by reason of her activities in managing the business of PRI for several months prior to June 30, 2003. Whether a party such as Kincaid owed a duty to a creditor such as Plaintiff is a question of law which we review de novo. *Moody v. Stribling*, 1999-NMCA-094, ¶ 17, 127 N.M. 630, 985 P.2d 1210.

It is well-established that corporate directors and officers owe a fiduciary duty

16

to the corporation and, once the corporation is insolvent, to creditors. *See Smith v. Cox*, 113 N.M. 682, 684-86, 831 P.2d 981, 983-85 (1992) (declining to adopt the trust fund theory in New Mexico but agreeing that corporate officers owe a fiduciary duty to creditors of an insolvent corporation). Defendants concede that Kincaid, as an officer, director, and manager, had a fiduciary duty to creditors although they dispute Plaintiff's contention that she breached that duty. The record clearly establishes that Kincaid was acting as an officer, director, and manager of PRI from February until PRI ceased operating at the end of June 2003. In the loan application dated February 5, 2003, Kincaid called herself president and represented that she owned 80% of PRI's stock. At trial, she testified that she ran the business for six months in 2003 and admitted that all managerial duties had transferred to her, at least by March 2003. Her testimony shows that she exercised the authority to make unilateral decisions regarding PRI such as selling what appears to be all of PRI's assets to Baldwin. Even Kincaid's own witness recognized that by the time PRI ceased doing business, Kincaid was in charge of the company's books and records. As an officer, director, and manager of an insolvent corporation effective as of December 31, 2002, Kincaid had a fiduciary duty to PRI's creditors. *See Smith*, 113 N.M. at 684-86, 831 P.2d at 983-85.

In addition to establishing that Kincaid owed creditors a fiduciary duty, Plaintiff

also had to prove that Kincaid's actions breached that duty. Plaintiff argues that Kincaid breached her fiduciary to PRI's creditors by engineering the transfer of assets from PRI to Baldwin and then to Med Express. As discussed above, the evidence supports the district court's ruling that Plaintiff failed to prove Kincaid fraudulently transferred PRI's assets in violation of the UFTA. Plaintiff failed to meet his burden of proof that PRI's assets had a value in excess of $750 or that PRI's assets were transferred as payment on the promissory note held by Kincaid. The district court also rejected Plaintiff's proposed findings and conclusions regarding any of his claims arising from the alleged preferential or fraudulent transfer of PRI's assets. Furthermore, Counts II, III, IV and V of Plaintiff's second amended compliant, asserting other wrongful conduct by Kincaid (breach of the stock redemption agreement, conversion, conspiracy, and tortious interference with prospective business relations), were dismissed prior to trial and were not appealed. Plaintiff failed to identify or assert any other legal claim for recovery arising from Kincaid's actions to engineer the transfer of assets by PRI to Baldwin and then to Med Express. As a result, Plaintiff failed to demonstrate at trial that Kincaid's fiduciary duty was breached as a result of her actions in engineering the transfer of PRI's assets. Since there was no act constituting a breach of Kincaid's fiduciary duty, Plaintiff was not entitled to judgment or an award of damages on this cause of action. Although we

18

conclude that the district court erred in finding that Kincaid did not owe a fiduciary duty to PRI's creditors, Plaintiff failed to present sufficient evidence to the district court that Kincaid breached her duty when she engineered the transfer of assets by PRI to Baldwin and then to Med Express.

**CONCLUSION**

For the foregoing reasons, we affirm the district court's findings that Kincaid did not fraudulently transfer any PRI assets to herself, Baldwin, or Med Express and its conclusion that Kincaid did not breach her fiduciary duty to Plaintiff and PRI's creditors.

**IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**MICHAEL E. VIGIL, Judge**

19