734 P.2d 226

**B & W CONSTRUCTION COMPANY, a New Mexico corporation, Donald Paul Wood and Robert Bowers, Plaintiffs-Appellees,**

v.

**N.C. RIBBLE COMPANY, a New Mexico corporation,
Defendant-Counterclaimant-Appellant,**

v.

**B & W CONSTRUCTION COMPANY, a New Mexico corporation, Donald Paul Wood and Robert Bowers, Counterdefendants-Appellees.**

No. 16066.

Supreme Court of New Mexico.

March 5, 1987.

Rehearing Denied April 1, 1987.

Miller, Stratvert, Torgerson & Schlenker, Alan Konrad, Stephen M. Williams, Albuquerque, for defendant-counterclaimant-appellant.

Marchiondo & Berry, Michael E. Vigil, Albuquerque, for plaintiff-appellee Bowers.

## OPINION

SOSA, Senior Justice.

This appeal arises out of a dispute over the rental of rock crushing machinery for highway construction. The jury found in favor of defendant N.C. Ribble Company (NCR) against B & W Construction Company (B & W) on the basic contract questions, but against NCR's effort to enforce a personal guarantee allegedly executed by plaintiffs-counterdefendants, Robert Bowers (Bowers) and Donald Paul Wood (Wood). NCR contends that three errors of the trial court led to the verdict in favor of Bowers and Wood. We affirm the trial court.

NCR raises three issues:

I. Whether the trial court erred in submitting the question of economic duress to the jury;

II. Whether the trial court erred in admitting the testimony of a polygrapher; and

III. Whether the trial court erred in refusing to give an instruction requested by NCR and a clarification when asked by the jury.

## BACKGROUND

The facts pertinent to this appeal are that B & W is a corporation, owned by Bowers and Woods, which subcontracted with a general contractor, Herzog Contracting Corporation (Herzog), to crush rock for construction of a highway near Alamogordo. B & W rented the necessary equipment from NCR and began working on September, 1981. On previous jobs, the parties had entered into lease agreements which provided that rental payments could contribute to the purchase price of the equipment. Apparently B & W anticipated a similar deal on the rock crushers at issue here.

From the outset, however, the agreement foundered. B & W failed to tender installment payments, while some of the machinery did not perform as promised. By January 7, 1982, B & W was approximately $700,000 in arrears on its lease, maintenance and parts payments. On that date the president of NCR, Norman Ribble (Ribble), notified B & W that NCR would exercise its lien rights and shut the job down unless other arrangements could be made to secure the present and future indebtedness. At this time Herzog, too, became impatient with the performance of B & W and threatened to terminate the subcontract. It appeared that the impasse could best be avoided by keeping B & W on the job so as to assure payment by Herzog, provided that such payment would ultimately come to NCR.

Ribble went to the offices of B & W on the morning of January 20, 1982 to present a proposal that the leasing would continue only if Bowers and Wood executed a personal guaranty covering the indebtedness.

Bowers refused.[1] Ribble returned in the afternoon, but the testimony differs as to the agreement arrived at orally. Bowers maintains that he suggested instead that he would guarantee B & W's payment to NCR only after Herzog had paid B & W and after the bank's first assignment had been satisfied. Bowers also insisted on a provision to cover refinancing on a purchase rather than a lease basis. Ribble's attorney had drafted a document, which Wood's secretary retyped supposedly to incorporate Bowers' suggestions. Wood signed one page and Bowers the other. Bowers' secretary notarized the signatures the next morning.

B & W kept the equipment and finished the job, but never paid NCR. Instead B & W filed this suit, alleging numerous deficiencies in NCR's performance of the rental contract. NCR counterclaimed against B & W for the amount owed, and against Bowers and Wood personally on the guaranty they had signed.

At trial, Bowers and Wood claimed that they had not signed the guaranty, or, if they had, it was as a result of economic duress and coercion. The jury found for NCR and against B & W on the debts, but in favor of Bowers and Wood individually. On appeal, NCR argues that the trial court should have directed a verdict for NCR on the personal guaranty. We address each component of the argument raised by NCR.

### I. Economic Duress

■ The jury instruction stating the case indicated that Bowers and Wood denied liability on the personal guaranty because:

(1) It was obtained under economic coercion or duress; or

(2) It was forged or altered from the document that they signed.

It cannot now be determined upon which ground the jury based its verdict. NCR maintains that reversal is required if it would be improper to base a verdict on one of the alternative theories, citing *Perfetti*

1. Bowers was the principal financial contributor to the corporation, while Woods oversaw the operational side.

*v. McGhan Medical*, 99 N.M. 645, 662 P.2d 646 (Ct.App.), *cert. denied*, 99 N.M. 644, 662 P.2d 645 (1983).

NCR contends that the trial court erred in submitting this issue to the jury instead of directing a verdict in NCR's favor, arguing that there is no basis in law for giving the instruction on economic duress because economic duress cannot result from the exercise of a legal right. *Terrel v. Duke City Lumber Co.*, 86 N.M. 405, 524 P.2d 1021 (Ct.App.1974), *aff'd in part, rev'd in part*, 88 N.M. 299, 540 P.2d 229 (1975). There is no question that NCR had the legal right to request security for the indebtedness.

Bowers and Wood counter this authority with the contention that NCR's legal rights extended only to B & W as a corporation and not to themselves as individuals. In *First National Bank v. Wood*, 93 N.M. 467, 601 P.2d 437 (Ct.App.1979), the court did find economic duress where the bank refused to continue defendant's line of credit unless he signed a guaranty on the separate account of his son.

NCR responds that it had the right to repossess the equipment or impose a lien on the job, both of which options it abandoned as consideration for Bowers and Wood executing the personal guaranty. Thus it would distinguish the facts of this case from those in *First National Bank v. Wood*, where the lending party gave up nothing as it insisted on an additional promise from the borrower. We point out, however, that the holding in *Wood* rests on the principle that duress can be found if the party in the superior bargaining position uses its power to deny the weaker party a reasonable choice of alternatives. *Id.* at 469, 601 P.2d at 439.

In the case at bar, NCR was the party possessing superior power. Bowers' theory throughout was that he never intended to sign any guaranty of B & W's indebtedness without a provision that Herzog would first have to pay B & W. A factual ques-

tion was thus raised by the evidence as to whether NCR's actions were coercive or not. NCR does not challenge the instructions given to the jury on the elements of economic duress. These properly stated that duress cannot result from the exercise of a legal right, as well as that proof of duress must be made by clear and convincing evidence.

From the foregoing, we conclude that the trial court acted properly in submitting the question of economic duress to the jury, and that it was not error to deny NCR's motion for a directed verdict.

## II. Testimony of Reilly Taitte

In support of his position that he did not recall signing the personal guaranty, Bowers proffered the testimony of Reilly Taitte, a polygraph examiner. This came after the court had refused to admit the testimony of Bill Cox, the polygrapher who had examined Wood. At the hearing, outside the presence of the jury, counsel for NCR objected to Taitte's testimony because not all of the pretest interview had been recorded, as required by NMSA 1978, Evidence Rule 707(e) (Repl.Pamp.1983) (Now SCRA 1986, 11–707–E). Counsel for Bowers stated that Taitte had recorded the interview. Counsel for NCR declined voir dire of the witness.

Rule 707 does not define "pre-test interview." Taitte testified that he recorded the interview according to his understanding of the rule. The tape of the interview and the test itself was introduced into evidence. On appeal NCR repeats its assertion that the pre-test interview was not recorded.[2]

Taitte went on to testify that Bowers gave truthful answers concerning the subject of a personal guaranty: that he did not sign anything to make himself personally liable to NCR for B & W's debts, but that he did sign something to assign payments from Herzog to NCR. He was not asked

---

**2.** At oral argument it came out that the cassette in question was not included in the record on appeal. The burden is upon appellant to provide the complete record. SCRA 1986, 12–211; *Nichols v. Nichols*, 98 N.M. 322, 648 P.2d 780

(1982). We have no basis, therefore, for reviewing NCR's claim; so we must conclude that the representation of Bowers' attorney and NCR's waiver of voir dire satisfied the requirements of Rule 707–E.

whether he signed the specific document in dispute.

In response, NCR called as an expert witness, Dr. David Raskin, whose testimony discredited the validity of the test performed by Taitte. The conflict between the two experts as to how the test should be conducted simply contributes to the controversy surrounding the subject of polygraph evidence. This court has repeatedly wrestled with the problem in the criminal context. *See Tafoya v. Baca,* 103 N.M. 56, 702 P.2d 1001 (1985).

■ Consistent with the other rules regulating the admission of expert testimony, Rule 707-C entrusts the admissibility of polygraph evidence to the sound discretion of the trial court. SCRA 1986, 11–707-C. *See Sturgeon v. Clark,* 69 N.M. 132, 364 P.2d 757 (1961) (court's ruling on qualification of expert not disturbed absent abuse of discretion). Given the inconclusiveness of the colloquy concerning the pre-test interview in the civil case before us, we determine that appellant's objections are not so clear and uncontroverted as to require reversal. The reliability of Taitte's testimony relates to the weight to be given the evidence, not to the question of its admissibility. We hold that the trial court did not abuse its discretion in allowing the testimony into evidence.

### III.  Jury Instructions

The two issues above assume that the guaranty was signed, but invalid, or that it was never signed. NCR's last point on appeal is that the jury might have disregarded or misconstrued its instructions and disallowed the personal guaranty on the basis that Bowers or Woods signed the document but meant something different by it than its terms would indicate. Instructions numbered 10, 11 and 12, respectively, defined the subjects of express contract, implied contract and mutual assent. "Meeting of the minds" was the concept contained in Number 10, while Number 12 distinguished between subjective and objective intent in contract formation. NCR tendered an instruction, Number 32, refused by the trial court, that the parties to a contract are bound by its terms.

During its deliberations, the jurors sent a note to the court which read, "Please clarify the language in instructions No. 10 and 12. We need the lay terms." The trial court properly concluded that it would be error to speculate about the thought process of the jury, and that, therefore, the question would be answered by a direction to consider the instructions given as a whole.

■ NCR argued then, as now, that the jury was misled by the suggestion of Bowers' attorney that one could not be bound by contract terms one did not understand. Thus the jury might have failed to enforce the personal guaranty because they would have found no "meeting of the minds." Furthermore, NCR intimates that this confusion caused the jury to request clarification.

Even if NCR's supposition were true, the relief it requested would not have cured the confusion, because its Instruction No. 32 goes to the duties of the parties once a contract has been formed, whereas, "meeting of the minds" goes to the question of whether a contract was formed in the first place. Secondly, in its brief, NCR agrees that "meeting of the minds" means mutual assent as reflected by the objective manifestations of the parties. Instruction No. 12, as given, properly states this standard. Finally, the question submitted by the jury does not reflect any conflict between Nos. 10 and 12, but at most an unfamiliarity with the terminology therein. We find no error in the instructions submitted to the jury nor in the rejection of NCR's requested No. 32.

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and WALTERS, J., concur.

STOWERS, J., dissents.

RANSOM, J., not participating.

452

STOWERS, Justice, dissenting.

I dissent.

I cannot concur in the majority opinion because I believe that the trial court erred, first, in submitting to the jury the defense of economic duress and, second, in submitting to the jury polygraph evidence inadmissible under NMSA 1978, Evid.Rule 707 (Repl.Pamp.1983) (now codified at SCRA 1986, 11–707). Because the jury may have based its verdict upon a legal theory that should not have been before it and also received polygraph evidence that should have been excluded, I would reverse the judgment in favor of Bowers and Wood on NCR's personal guaranty counterclaim and would remand for a new trial on that counterclaim alone.

## I. Economic Duress

This Court long has recognized that a party coerced into a transaction by the wrongful act of another party may void that transaction. *See Pecos Constr. Co. v. Mortgage Investment Co.*, 80 N.M. 680, 682–83, 459 P.2d 842, 844–45 (1969); *see also Cadwell v. Higginbotham*, 20 N.M. 482, 508–11, 151 P. 315, 322–23 (1915). The doctrine of economic compulsion or economic duress protects the party in a weaker bargaining position from the unreasonable exercise of economic power or advantage by the party in a stronger position by imposing upon the latter a duty to offer the weaker party a reasonable choice of alternatives. *See Terrel v. Duke City Lumber Co.*, 86 N.M. 405, 422–23, 524 P.2d 1021, 1038–39 (Ct.App.1974), *aff'd in part, rev'd in part*, 88 N.M. 299, 540 P.2d 229 (1975). Economic duress therefore cannot be established if a reasonable choice of alternatives was available to the weaker party. *See id.*, 86 N.M. at 419, 524 P.2d at 1035; *see also First National Bank v. Wood*, 93 N.M. 467, 469, 601 P.2d 437, 439 (Ct.App.1979). Nor can it be established if the conduct threatened by the stronger party consisted merely of the exercise of a legal right, under circumstances in which that conduct would have been justified if the weaker party had refused to accept the stronger party's contractual offer. *See Terrel v.*

*Duke City Lumber Co.*, 86 N.M. at 423, 526 P.2d at 1039; Note, *Economic Duress After the Demise of Free Will Theory: A Proposed Tort Analysis*, 53 Iowa L. Rev. 892, 910 (1968); *cf. Long Island Lighting Co. v. Bokum Resources Corp.*, 40 B.R. 274, 294–96 (Bkrtcy.N.M.1983) (legal right and reasonable alternatives defenses; decided under N.M. law); *Electrical Products Co. v. Combined Communications Corp.*, 535 F.Supp. 356, 360 (D.N.M.1980) (legal right defense; decided under N.M. law); *First National Bank v. Wood*, 93 N.M. at 469–70, 601 P.2d at 439–40 (Wood, C.J., specially concurring) (legal right defense).

As the majority opinion observes, there is no question that NCR had the legal right to request security for B & W's obligations. There is also no question that NCR had the legal right to repossess the leased equipment and to file liens against the job to secure payment of B & W's indebtedness of approximately $700,000. Furthermore, the record clearly indicates that the parties negotiated at length, alternatives were offered, and NCR gave valuable consideration for the personal guaranty agreement by waiving its right to file liens. On the evidence and the facts of this case, reasonable minds cannot differ in concluding that NCR merely threatened to exercise a legal right and that its threatened conduct would have been justified had Bowers and Wood not acceded to NCR's demand for personal guaranties. The trial court therefore had a duty to direct a verdict against Bowers and Wood on their economic duress defense to NCR's counterclaim on the personal guaranty agreement. *See Owen v. Burn Construction Co.*, 90 N.M. 297, 301–02, 563 P.2d 91, 95–96 (1977). It erred in instructing the jury on that defense.

## II. Polygraph Evidence: Testimony of Reilly Taitte

The "twisted history" of the admission of polygraph test evidence in New Mexico has been recounted elsewhere. *See Tafoya v. Baca*, 103 N.M. 56, 57–59, 702 P.2d 1001, 1002–04 (1985); *State v. Anthony*, 100

N.M. 735, 737–38, 676 P.2d 262, 264–65 (Ct.App.1983); *and cases cited therein.* In 1983, this Court promulgated Rule 707 in order to supersede our troublesome case law criteria and to standardize the admission of polygraph evidence by establishing detailed minimum requirements for polygraphs examiners and examinations. *See Tafoya v. Baca,* 103 N.M. at 59–60 & n. 2, 702 P.2d at 1004–05 & n. 2; *State v. Anthony,* 100 N.M. at 737–39 & n. 1, 676 P.2d at 264–66 & n. 1. One of those requirements is that the "pretest interview and actual testing * * * be recorded *in full.*" *See* NMSA 1978, Evid.R. 707(e) (Repl.Pamp. 1983) (now codified at SCRA 1986, 11–707(E)) (emphasis added).

The record indicates that the trial court was informed that Reilly Taitte, the polygraph examiner who tested Bowers, had not recorded the portions of the pretrial interview during which the examination questions were formulated. Nevertheless, the trial court admitted Taitte's testimony and the results of that examination over NCR's objection. Although the trial court may, in its discretion, admit evidence of polygraph examinations conducted in accordance with the provisions of Rule 707, the trial court here had no authority to admit evidence of an examination conducted in violation of the clear and express recording requirement of Rule 707(e). *See State v. Anthony,* 100 N.M. at 739, 676 P.2d at 266 (dicta); NMSA 1978, Evid.R. 707(c) (Repl.Pamp.1983) (now codified at SCRA 1986, 11–707(C)). It erred in submitting Reilly Taitte's testimony to the jury.

## III. Conclusion

If the jury's verdict in favor of Bowers and Wood on the personal guaranty issue was based upon the defense that the guaranty agreement was forged or altered from the document they signed, that verdict should be reversed because the trial court erroneously admitted polygraph evidence prejudicial to the substantial rights of NCR. If the jury's verdict was based upon the defense of economic duress, that verdict should be reversed because the trial court erroneously instructed the jury on that defense when it should have directed a verdict in favor of NCR. Because we do not know which theory underlay the jury's verdict, the judgment in favor of Bowers and Wood on the personal guaranty counterclaim should be reversed and the case remanded for a new trial on this issue. *Cf. Perfetti v. McGhan,* 99 N.M. 645, 655, 662 P.2d 646, 656 (Ct.App.), *cert. denied,* 99 N.M. 644, 662 P.2d 645 (1983) (remand where alternative theory erroneously submitted).

For the foregoing reasons, I respectfully dissent.