737 P.2d 537

**WESTERN BANK, a New Mexico Corporation, Plaintiff-Appellant,**

v.

**AQUA LEISURE, LTD., a New Mexico Limited Partnership, Daniel Angelini, Defendants,**

v.

**William F. BARNHART, Pool Enterprises, Inc., Dudden Elevators, Inc. and Richard Dudden, Gregory L. Bamford, J. Kent Bamford and Bamford Land Company, Defendants-Appellees.**

No. 16612.

Supreme Court of New Mexico.

May 13, 1987.

Rehearing Denied June 4, 1987.

Civerolo, Hansen & Wolf, Dennis E. Jontz, Ross L. Crown, Albuquerque, for plaintiff-appellant.

Johnson & Lanphere, Gerald R. Cole, Albuquerque, for defendants-appellees Pool Enterprises, et al.

Bruce E. Pasternack, Nancy Augustus, Albuquerque, for defendant-appellee Barnhart.

## OPINION

SCARBOROUGH, Chief Justice.

Western Bank (Western) appeals a district court order denying Western's motion for summary judgment and granting appellees' cross-motions for summary judgment. Western brought suit on two promissory notes originally executed by Malibu Pools of New Mexico, Inc. (Malibu) and accompanying guaranty agreements signed by William Barnhart, Pool Enterprises, Inc. (not subject to Western's motion for summary judgment), Dudden Elevators, Inc., Richard Dudden, Gregory Bamford, J. Kent Bamford, and Bamford Land Company (appellees). We reverse the summary judgment in favor of appellees.

In 1978 and again in 1980, Malibu borrowed money from Western as evidenced by two notes, the repayment of which was secured by Western's perfected security interest in Malibu collateral. Between February 1978 and September 1981, appellees individually executed continuing guaranty agreements to Western guarantying payment of the two notes. On October 21, 1981, without the prior consent of appellees, Western released Roger Rankin (Rankin), a coguarantor on the Malibu notes, from any further guarantor obligation. Malibu later defaulted on the notes and was placed in bankruptcy.

On October 18, 1983, in conjunction with the purchase of Malibu's assets, Aqua Leisure, Ltd. (Aqua) entered into a written agreement with Malibu and Western in which Aqua agreed to assume and be responsible for the Malibu notes. Pursuant to the assumption agreement (Aqua agreement), interest and payment terms on the Malibu notes were changed. New guarantors with additional security were brought in, and Malibu conveyed its interest in the Malibu collateral to Aqua subject to Western's security interest. Paragraph seven of the Aqua agreement provided that existing guaranties should remain in place as they then currently applied. With the exception of Pool Enterprises, Inc. (Pool), all appellees approved and signed the agreement.

This case presents four issues for decision:

1. Were appellees released from their guaranty obligations by the release of coguarantor Rankin; and if so, to what extent?

2. Were appellees released from their guaranty obligations by Aqua's assumption of Malibu's debts?

3. Was summary judgment in favor of Western precluded by appellees' allegations that Western disposed of collateral in a commercially unreasonable manner?

4. Was summary judgment in favor of Western against appellee Dudden Elevators, Inc. (Dudden) precluded by Dudden's claim of economic coercion?

## ISSUE (1):

Paragraph seven of the Aqua agreement is silent as to the consequences of the release of Rankin as a coguarantor. Western argues that this paragraph establishes appellees' after-the-fact consent to the Rankin release. Appellees disagree and claim they were discharged as guarantors of the Malibu notes because Rankin was discharged without their consent. We agree with appellees.

■ A guarantor is discharged from his obligation if there is a material change in the obligation unless the guarantor consents to the change. *See Pacific Nat'l Agric. Credit Corp. v. Hagerman,* 39 N.M. 549, 51 P.2d 857 (1935). Rankin's release

materially changed appellees' guaranty obligations. In view of the favored status of guarantors and of the principle that a guarantor's liability will not be extended by implication (*see Shirley v. Venaglia*, 86 N.M. 721, 724, 527 P.2d 316, 319 (1974)), we do not read paragraph seven of the Aqua agreement to constitute after-the-fact consent to the release of Rankin; the agreement does not mention the Rankin release. Therefore, at the time the parties entered into the Aqua agreement, appellees had already been discharged as guarantors on the two Malibu notes to the extent allowed by law.

Appellees contend that they were completely discharged as guarantors by virtue of their lack of consent to Rankin's release. Western, on the other hand, contends that appellees were discharged only to the extent of their right of contribution from Rankin. We are of the opinion that appellees are not entitled to a complete release from their guaranty agreements; rather, they are entitled to discharge only to the extent of their right to contribution from Rankin.

█ At common law, the release of one surety without the consent of cosureties operated to totally discharge the remaining sureties;

> [b]ut in most jurisdictions this common-law rule has been modified or departed from by the interposition of equitable principles according to which the cosurety is granted a release from liability to the extent to which he suffered actual prejudice * * * exonerating him to the extent to which he could have claimed contribution from his cosurety had the latter not been released.

74 Am.Jur.2d *Suretyship* § 83 (1974); *see also* Restatement of Security § 135 (1941); *cf. Clark Leasing Corp. v. White Sands Forest Prods., Inc.*, 87 N.M. 451, 455–56, 535 P.2d 1077, 1081–82 (1975) (secured party's failure to dispose of collateral in a commercially reasonable manner does not result in forfeiture of right to deficiency, but only requires reduction of the claimed deficiency by the amount of any loss occasioned by such failure). Equity is best served by the modified rule. We therefore adopt the rule that where a surety is released without the consent of cosureties, the cosureties are discharged only to the extent that they were prejudiced by the release, i.e., to the extent of their right to contribution from the released surety. Appellees therefore remained liable on the Malibu guaranties and were discharged only to the extent of their right to contribution from Rankin.

**ISSUE (2):**

· █ Appellees claim the Aqua agreement was a new contract with a new debtor, Aqua, and argue that the Aqua agreement extinguished the Malibu debts and discharged appellees as Malibu guarantors by operation of law. The trial court was obviously persuaded by appellees' arguments. It found there was a novation, a substituted contract with Aqua, which discharged appellees as guarantors of the Malibu debt. If there was a novation, it must be inferred from the conduct of the parties; substitution of one contract for the other was not mentioned in the Aqua agreement. Western denies that there was a novation and argues that it had no intention of releasing appellees by executing the Aqua agreement.

There are several features of a novation. *See Sims v. Craig*, 96 N.M. 33, 35, 627 P.2d 875, 877 (1981). One feature is the extinguishment of the old obligation. Moreover, " '[i]n order to effect a novation there must be a clear and definite intention on the part of all concerned [that a novation take place].' " *Id.* (quoting 58 Am.Jur.2d *Novation* § 20 (1971)). There was no express extinguishment of the Malibu notes, and there is no evidence in the record to suggest that Western intended to extinguish the Malibu debt: the Malibu notes were not marked paid; they are the basis of and are attached to Western's complaint. We therefore decline to infer a novation from the facts of this case.

Importantly, all appellees except Pool signed the Aqua agreement in which they expressly agreed to be Aqua's guarantors to the extent they were then Malibu's guar-

antors, i.e., according to the terms of their guaranties and taking into account their partial discharges resulting from Rankin's release. In sum, the Aqua agreement was an assumption agreement and not a substitute contract or novation. The trial court erred in reaching a contrary conclusion.

■ Appellee Pool was granted summary judgment on its cross-motion against Western. Pool was a guarantor of the Malibu notes but did not sign the Aqua agreement. As already stated, Pool is entitled to discharge from its guaranty of the Malibu notes to the extent of its right to contribution from Rankin. Although we have concluded that the Aqua agreement did not constitute a novation, questions of fact remain concerning whether Pool consented to the terms of the Aqua agreement and whether, absent consent, the Aqua agreement materially changed the nature of Pool's obligation so as to completely discharge Pool from liability. The trial court erred in ruling as a matter of law that Pool was discharged from its guaranty obligation.

## ISSUE (3):

■ Appellees argue that Western was obligated to dispose of the Malibu collateral in a commercially reasonable manner. A similar argument was rejected by us in *American Bank of Commerce v. Covolo,* 88 N.M. 405, 540 P.2d 1294 (1975). The rights of the guarantor as against the creditor are determined by the terms of the contract between them. *Id.* at 408, 540 P.2d at 1297. The continuing guaranty agreement signed by each appellee specifically provides that Western may "sell, at public or private sale, and for such price and upon such terms as it may deem reasonable, any collateral now or hereafter held by it ... without in any manner affecting the liability of the [guarantor]." The language of the contract between the parties affords appellees none of the rights they assert in connection with Western's disposal of the Malibu collateral. Western's alleged failure to dispose of collateral in a commercially reasonable manner there-

fore should not preclude entry of summary judgment in favor of Western.

## ISSUE (4):

■ Appellee Dudden claims there are further unresolved factual issues which preclude entry of summary judgment against it. Dudden claims there is a factual dispute concerning the signature on the guaranty agreement, and it claims evidence exists showing that the Dudden guaranty was secured by economic coercion or duress. Western says Dudden never raised these defenses in the trial court. We observe that Dudden admitted execution of the guaranty in its answer to Western's complaint. Deposition testimony of Richard Dudden, who signed the guaranty on behalf of Dudden, indicated the guaranty was signed to forestall Western from instituting collection action against Malibu on a delinquent account. Agreeing to forbear from collection action on a delinquent account in exchange for a guaranty does not constitute economic coercion or duress. *See B & W Construction Co. v. N.C. Ribble Co.,* 105 N.M. 448, 734 P.2d 226 (1987). Dudden's arguments are frivolous and should not preclude entry of summary judgment in favor of Western.

Costs of this appeal are assessed against appellees. The summary judgment in favor of appellees is reversed, and this case is reinstated on the docket of the district court for action consistent with this opinion.

IT IS SO ORDERED.

STOWERS and WALTERS, JJ., concur.