823 P.2d 912

**SUNWEST BANK OF CLOVIS, N.A., Plaintiff–Appellee,**

v.

**Michael T. GARRETT, Clare Anne Garrett, Malcolm G. Garrett, Donna Jean Garrett, Curry County Grain & Elevator Company, Inc., Citizens Bank of Clovis, and CBC, Inc., Defendants–Appellants.**

No. 19530.

Supreme Court of New Mexico.

Jan. 6, 1992.

Rehearing Denied Feb. 7, 1992.

Templeman & Crutchfield, C. Barry Crutchfield, Lovington, for defendants-appellants.

Modrall, Sperling, Roehl, Harris & Sisk, J. Douglas Foster, Diane Mazur, Albuquerque, for plaintiff-appellee.

## OPINION

BACA, Justice.

Defendants-appellants Malcolm and Donna Garrett appeal the trial court's order granting a directed verdict in favor of plaintiff-appellee Sunwest Bank of Clovis (Sunwest). We affirm.

## I. FACTS

Curry County Grain & Elevator Co. (Curry County Grain) is a family owned and managed corporation. In 1985, Michael Garrett and his brother Malcolm Garrett were officers of Curry County Grain. Michael and his wife Clare Garrett and Mal-

colm and his wife Donna Garrett signed an unconditional and continuing guaranty (the "Guaranty") that guaranteed payment of Curry County Grain's corporate debt to Sunwest. Curry County Grain borrowed money from Sunwest as evidenced by a note signed by Malcolm and Michael on behalf of the corporation on August 12, 1986. The note was secured by mortgages on two properties owned by Curry County Grain. Citizens Bank of Clovis (Citizens Bank) was a junior lien holder on the Curry County Grain properties. The 1986 note was renewed in 1987 in the same principal amount. In addition, Michael and Clare and appellants had received separate personal loans from Sunwest as evidenced by personal notes.

In 1988, Sunwest, Citizens Bank, and Curry County Grain devised a plan to reduce the Curry County Grain debt whereby Sunwest would release the mortgages on the Curry County Grain properties in exchange for two payments from Citizens Bank. The unpaid portion of the Curry County Grain debt to Sunwest would be secured by other property owned by Curry County Grain. After it received the payments from Citizens Bank, Sunwest issued documents that purportedly released the mortgage and the remaining Curry County Grain debt. Even after the purported release of the underlying debt, Michael Garrett, as president of Curry County Grain, acknowledged and continued to negotiate for settlement of the remaining Curry County Grain debt.

In 1989, the personal note of appellants came due. Appellants attempted to refinance this debt but Sunwest refused unless appellants would satisfy the remaining balance due on the Curry County grain debt. Sunwest then instituted this foreclosure action against Curry County Grain, Michael and Clare, Citizens Bank, and appellants. Sunwest sought a money judgment on the corporate debt of Curry County Grain, the personal debts and guarantees of Michael and Clare, the personal debts and guarantees of appellants, and a decree of foreclosure on the properties held as security. Appellants' answer raised the defense of release and accord and satisfaction of the corporate debt along with a counterclaim asserting economic coercion. Appellants made a timely request for a jury trial on their defenses and counterclaim and Sunwest moved for summary judgment on its complaint and on appellants' counterclaim.

The trial court ordered a trial on the merits and allowed appellants to present evidence to demonstrate that they could present issues of fact that were appropriate for a jury determination. On the day of trial, Sunwest reached a settlement with Michael and Clare and released them from the Guaranty. At the close of the hearing, the trial court ruled that appellants had not presented evidence to create questions of fact sufficient to withstand a motion for a directed verdict. The trial court also ruled that, by virtue of their personal guarantees, appellants were liable for the entire amount of Curry County Grain's secured debt. This appeal followed.

## II. DISCUSSION

Appellants raise two issues that we address on appeal. First, whether the trial court erred in directing a verdict in favor of Sunwest. Second, whether the trial court erred in awarding Sunwest a judgment for the entire claim in view of Sunwest's release of the co-guarantors. For the following reasons, we affirm the trial court on both issues.

### A. Did the trial court err in directing a verdict for Sunwest?

Appellants offer three arguments that we consider in determining if the trial court erred when it directed a verdict in favor of Sunwest. First, whether appellants' defense of payment of the corporate debt raised an issue of fact that entitled them to a jury trial. Second, whether appellants were entitled to a jury determination of their liability on their personal guarantees. Third, whether appellants were entitled to a jury on their counterclaim of economic coercion. Appellants argue that by granting a directed verdict on these issues, the trial court took upon itself the task of the fact finder and eliminated the jury's func-

tion. Appellants conclude that the trial court erred in awarding judgment to Sunwest.

Appellants first contend that whether the corporate debt had been completely satisfied raises a question of fact that must be determined by a jury. Sunwest contends that the corporate debt was not fully paid and the release of total corporate indebtedness was inadvertent. Sunwest argues that appellants failed to present sufficient evidence to create an issue of fact and that appellants were not entitled to a jury determination on this issue. We agree with Sunwest.

■■■ A directed verdict is appropriate only when there are no true issues of fact to be presented to a jury. *Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 729, 749 P.2d 1105, 1108, *cert. denied*, 488 U.S. 822, 109 S.Ct. 67, 102 L.Ed.2d 44 (1988). All evidence, including the evidence presented by the party moving for the directed verdict, must be considered. *Id.* at 728–29, 749 P.2d at 1107–08. Any conflicts in the evidence or reasonable interpretations of the evidence are viewed in favor of the party resisting the directed verdict. *Id.* The sufficiency of evidence presented to support a legal claim or defense is a question of law for the trial court to decide. *American Employers' Ins. Co. v. Crawford*, 87 N.M. 375, 376, 533 P.2d 1203, 1204 (1975); *Loucks v. Albuquerque Nat'l Bank*, 76 N.M. 735, 740, 418 P.2d 191, 195 (1966).

■■ A release of an instrument is ineffective if it is done unintentionally or by mistake. *Los Alamos Credit Union v. Bowling*, 108 N.M. 113, 114, 767 P.2d 352, 353 (1989). In *Los Alamos Credit Union*, the lender inadvertently marked a note as paid and released the accompanying mortgage even though the note was not paid. The borrowers refused the lender's request to reaffirm the note and to have the mortgage reinstated. After the borrowers failed to make a payment due under the original note, the lender brought a foreclosure suit, alleging that the release was a clerical error. The borrowers asserted that the lender could not avoid a properly executed, unambiguous release of the mortgage. In upholding the trial court's grant of summary judgment in favor of the lender, we held that the borrowers failed to present evidence sufficient to create a genuine issue of fact denying the existence of the obligation and that therefore, summary judgment was appropriate. *Id.*

■ As in *Los Alamos Credit Union*, appellants in the instant case have failed to present a genuine issue of fact concerning the existence of the obligation. Three letters exchanged among Curry County Grain, Sunwest, and Citizens Bank were introduced into evidence regarding satisfaction of the Curry County Grain debt and release of the debt and mortgages. These letters indicated that the corporate debt was only partially satisfied. Randy Harris, President of Sunwest, testified that the form that purportedly released the debt was used by mistake and that the intent in using the form was to release the mortgages and not the debt. Testimony established that Michael Garrett continued to negotiate on behalf of Curry County Grain after the purported release was issued. This evidence establishes that the Curry County Grain debt was only partially satisfied and that the mortgages, and not the underlying debt, were released. Like the borrowers in *Los Alamos Credit Union*, appellants here have in effect asserted that an unambiguous release cannot be avoided. Appellants have presented no evidence refuting the existence of the underlying corporate debt and thus, have not created an issue of fact. The trial court did not err in granting a directed verdict on this issue.

■■ Appellants next contend that they are entitled to a jury to determine whether they are liable on their personal guarantees of the Curry County Grain debt. A party in a foreclosure action is entitled to a jury trial on legal issues that are independent of the foreclosure suit. *State ex rel. McAdams v. District Court*, 105 N.M. 95, 96, 728 P.2d 1364, 1365 (1986). Whether a party is liable as a guarantor is a legal issue independent of the foreclosure action that entitles the party to a jury trial. *Id.* at 97, 728 P.2d at 1366. However, the party

is not entitled to a jury trial on issues that are incidental to the foreclosure suit such as the existence or amount of the underlying debt. *Id.*

■ In the instant case, appellants do not contest their liability as guarantors; rather, they contest the existence of the corporate debt. Under *McAdams*, the existence of the debt is an issue incidental to the foreclosure suit that does not entitle appellants to a jury trial. Therefore, the trial court did not err in granting a directed verdict on this issue.

■ Appellants' final argument regarding their entitlement to a jury trial is that their counterclaim of economic coercion presented an issue of fact. Appellants contend that Sunwest refused to refinance their personal debt unless the Curry County Grain debt was satisfied. Appellants argue that if the Curry County Grain debt had previously been satisfied, Sunwest's actions constitute economic coercion because appellants would be forced to satisfy a debt for which they previously had not been liable. *See B & W Constr. Co. v. N.C. Ribble Co.*, 105 N.M. 448, 734 P.2d 226 (1987); *First Nat'l Bank v. Wood*, 93 N.M. 467, 469, 601 P.2d 437, 439 (Ct.App. 1979).

As appellants recognize, however, their claim of economic coercion is contingent on a finding that the corporate indebtedness had been fully satisfied. As discussed above, the corporate indebtedness was not completely satisfied. Thus, the cases cited by appellant are distinguishable from the instant case. For instance, in *Wood*, the bank forced the borrower to guarantee a loan on which he was not previously liable and thus, he could assert a claim of economic coercion. 93 N.M. at 469, 601 P.2d at 439. Similarly in *B & W Construction*, shareholders were forced to sign individual guarantees of corporate indebtedness to avoid repossession of their equipment. This constituted economic coercion because the shareholders had no individual liability prior to the threats of repossession. 105 N.M. at 449–50, 734 P.2d at 227–28. In contrast, appellants in the instant case were already liable on the Curry County

Grain debt when they attempted to renegotiate their personal debt. Sunwest had an existing right to require appellants to satisfy the corporate debt. Thus, appellants' counterclaim fails to present an issue of fact sufficient to avoid a directed verdict.

B. Did the trial court err in granting judgment for the full debt in light of Sunwest's release of the co-guarantors?

Appellants next argue that the trial court erred when it awarded Sunwest a judgment for the full amount of the underlying Curry County Grain debt in light of Sunwest's release of the co-guarantors. The release of the co-guarantors, appellants contend, precludes them from seeking contribution from the released guarantors. Thus, appellants argue that their liability should be proportionately reduced.

At common law, the discharge of one surety without the consent of the co-sureties completely discharged the remaining sureties. *Western Bank v. Aqua Leisure, Ltd.*, 105 N.M. 756, 758, 737 P.2d 537, 539 (1987). However, in a majority of jurisdictions including New Mexico, this rule has been modified to release the co-surety only to the extent that the co-surety was prejudiced by the release. *Id.;* 74 Am.Jur.2d *Suretyship* §§ 82–83 (1974); 72 C.J.S. *Principal & Surety* §§ 173–74 (1987).

In the instant case, appellants argue that the release of Michael and Clare by Sunwest was without appellants' knowledge or consent and that therefore, they are entitled to a pro rata reduction in their obligation under the Guaranty. Sunwest argues that under the terms of the Guaranty, appellants consented in advance to allow Sunwest to release the co-guarantors without affecting or impairing Sunwest's ability to collect from appellants. We agree with Sunwest.

■ The respective rights of the guarantor and the creditor are determined by reference to the terms of the contract between them. *Aqua Leisure*, 105 N.M. at 759, 737 P.2d at 540; *First State Bank v. Muzio*, 100 N.M. 98, 100, 666 P.2d 777, 779

(1983); *American Bank of Commerce v. Covolo,* 88 N.M. 405, 408, 540 P.2d 1294, 1297 (1975). The guarantor may waive legal defenses to his or her liability in advance under the terms of the guaranty. *Aqua Leisure,* 105 N.M. at 759, 737 P.2d at 540 (waiver of commercially reasonable sale of collateral); *Muzio,* 100 N.M. at 100, 666 P.2d at 779 (waiver of homestead exemption and collection priorities); *Covolo,* 88 N.M. at 409, 540 P.2d at 1298 (waiver of commercially reasonable sale of collateral). The guarantor is a favorite of the law and is entitled to have the guaranty strictly construed in his or her favor. *Shirley v. Venaglia,* 86 N.M. 721, 724, 527 P.2d 316, 319 (1974); *Bank of New Mexico v. Northwest Power Prod., Inc.,* 95 N.M. 743, 747, 626 P.2d 280, 284 (Ct.App.1980).

■ In the instant case, appellants signed the Guaranty, which contained the following clause:

> SUNWEST may from time to time and without affecting or impairing Guarantors' liability hereunder sell, release, surrender, exchange, settle, compromise, waive, subordinate, modify or amend, with or without consideration and on such terms and conditions as may be acceptable to SUNWEST, any and all of the collateral, security guarantees, documents and instruments evidencing the Guaranteed Obligations or the security for the payment thereof, or other obligors thereunder. All settlements, compromises, compositions, accounts stated and agreed balances entered into between SUNWEST and Borrower shall be binding upon Guarantors.

Appellants contend that, notwithstanding this clause, Sunwest could not release the co-guarantors without reducing the appellants' liability under the Guaranty. We disagree.

In *Muzio,* we upheld the validity of a clause in a guaranty contract that waived the benefit of a homestead exemption. 100 N.M. at 100, 666 P.2d at 779. In that case, we held "that the specific terms of the guaranty contract control the rights of the parties ...." *Id.* We reasoned that "this waiver was an integral part of the credit which was extended, and we are reluctant to impair arms-length contractual obligations and allow [appellant Muzio] to violate his guaranty contract." *Id.*

The reasoning from *Muzio* is applicable to the instant case. The clause quoted from the Guaranty was an integral part of the credit extended by Sunwest to Curry County Grain. Appellants have not asserted that the transaction between Sunwest and Curry County Grain was anything other than an arms-length transaction. Thus, we now hold, as we held in *Muzio,* that the specific terms of the Guaranty control the rights of appellants and Sunwest. The language of the Guaranty establishes joint and several liability among the guarantors of the Curry County Grain debt. To agree with appellants' contention and allow them to avoid the effects of the Guaranty "would require this Court to ignore the plain and express language of the guaranty contract." *Muzio,* 100 N.M. at 102, 666 P.2d at 781. Therefore, we affirm the trial court's ruling that under the Guaranty, appellants are liable for the entire amount of the Curry County Grain debt.

The judgment is AFFIRMED.

IT IS SO ORDERED.

MONTGOMERY and FRANCHINI, JJ., concur.