This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**ALEXSANDRA LOPEZ,**

Plaintiff-Appellant,

v.                                                                    **NO.   32,085**

**DANIEL MARTINEZ and**
**SAFECO INSURANCE**
**COMPANY OF AMERICA,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF RIO ARRIBA COUNTY**
**Sheri A. Raphaelson, District Judge**

Branch Law Firm
John A. Aragon
Santa Fe, NM

for Appellant

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Brenda M. Saiz
Tyler M. Cuff
Jocelyn Drennan
Albuquerque, NM

for Appellees

**MEMORANDUM OPINION**

**KENNEDY, Chief Judge.**

{1}    Alexsandra Lopez (Plaintiff) was struck from behind in a car accident. Approximately eight months later, after meeting a chiropractor named Dr. Robin Silverman at a public health fair, she began receiving treatment from her. Dr. Silverman testified for Plaintiff at trial. At the close of Plaintiff's case-in-chief, Daniel Martinez (Defendant) moved for a directed verdict, which the district court granted.

{2}    We affirm the district court's judgment in favor of Defendant. Plaintiff's counsel and expert failed to provide the jury with sufficient evidence on the element of causation, such that a reasonable jury would have a legally sufficient evidentiary basis to find for Plaintiff. As a result, the motion was properly granted. In addition, the district court found that no legally sufficient foundation existed for the opinion of Dr. Silverman from whom all causation evidence came. Because we affirm the district court's decision regarding the sufficiency of causation evidence, we need not address the sufficiency of the foundation for Dr. Silverman's opinion.

**I.    DISCUSSION**

{3}    Judgment as a matter of law is governed by Rule 1-050 NMRA. The rule requires that the court find "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue" before granting a motion for

2

judgment as a matter of law, or directed verdict. Rule 1-050(A)(1). "The sufficiency of evidence presented to support a legal claim or defense is a question of law for the [district] court to decide." *Sunwest Bank of Clovis, N.A. v. Garrett*, 1992-NMSC-002, ¶ 9, 113 N.M. 112, 823 P.2d 912. Judgment as a matter of law is generally disfavored. *See American Nat'l Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 7, 293 P.3d 954 ("Our Supreme Court has cautioned that judgment as a matter of law is a drastic measure that is generally disfavored inasmuch as it may interfere with the jury function and intrude on a ligitant's right to a trial by jury." (internal quotation marks and citation omitted)). Judgment as a matter of law is proper when there is "no substantial evidence supporting one or more essential elements of the case." *Klopp v. Wackenhut Corp.*, 1992-NMSC-008, ¶ 3, 113 N.M. 153, 824 P.2d 293.

{4} "In reviewing whether a directed verdict was appropriate, we consider all evidence that has been properly admitted at trial, as well as all reasonable inferences deducible therefrom, resolving any conflicts or contradictions in the evidence in a light most favorable to the party resisting the motion." *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 31, 133 N.M. 804, 70 P.3d 794. Accordingly, the reviewing court "may consider only evidence that has been admitted in the plaintiff's case-in-chief and any evidence a defendant introduced through cross-examination." *Id.* Whether sufficient evidence exists as a matter of law, to justify a verdict in a party's favor, is a question we review de novo. *Id.*

3

**{5}**     We must initially address Plaintiff's argument that Defendant "waived any objection to the admission of [Dr. Silverman's] testimony." In this portion of her brief, Plaintiff mischaracterizes defense counsel's Rule 1-050 motion as "the [d]efense's day-late foundation objection[.]" Despite whatever arguments may have been tangentially made during the oral deliberation on this motion, the crux of defense counsel's motion was clearly stated in his initial statement to the court. In regards to the causation for Plaintiff's neck pain, back pain, and headaches, she had "put forth no evidence, no medically reliable evidence, to support the contention that these injuries are causally connected to the accident at issue." Because we see this statement as clear evidence that the argument centered on the legal insufficiency of causation evidence, rather than the admissibility of testimony, we reject Plaintiff's argument on this issue.

4

**A. Plaintiff's Case-in-Chief Did Not Provide Substantial Evidence to Support the Essential Element of Causation**

**1. Plaintiff Did Not Adequately Prove Causation Through Dr. Silverman's Testimony**

{6} The plaintiff has the burden of proving the requisite elements in a negligence cause of action. *Folz v. State*, 1990-NMSC-075, ¶ 33, 110 N.M. 457, 797 P.2d 246. A negligence claim requires proof of duty, breach, proximate causation, and damages. *Lopez v. Maez*, 1982-NMSC-103, ¶ 11, 98 N.M. 625, 651 P.2d 1269 (listing the elements necessary to prove an action in negligence). A directed verdict is proper when there is "no substantial evidence supporting one or more essential elements of the case." *Klopp*, 1992-NMSC-008, ¶ 3. We therefore must decipher from the record whether Dr. Silverman's testimony amounts to substantial evidence of causation. We determine that it does not.

{7} Immediately following Plaintiff's case-in-chief, Defendant moved for a directed verdict under Rule 1-050(A)(1) and stated: "Plaintiff has put forth no evidence, no medically reliable evidence, to support . . . the contention that these injuries are causally connected to the accident at issue." Plaintiff's counsel responded with a perfunctory assertion that causation was proven.

{8} After Plaintiff's counsel's cursory statement regarding causation during his initial response, the district court prompted: "That's all you want to say about causation?" Plaintiff's counsel replied: "Dr. Silverman gave her opinion that . . . the

5

bills and records were reasonable, necessary, and caused by the accident." The district court responded by pointing out that "she never did say 'caused by the accident.'" The district court and Plaintiff's counsel then began discussing exactly what Dr. Silverman had stated. The district court pointed out that only two questions asked by Plaintiff's counsel actually dealt with causation, and Dr. Silverman's "response was never, 'Yes.' There was never an unequivocal[,] 'Yes,' . . . her injuries were caused by the accident." Plaintiff's counsel replied by explaining that he interpreted Dr. Silverman's answer to be in the affirmative. This exchange continued for several minutes and eventually led to a replaying of the record.

**a. Dr. Silverman's "[B]ased on Her History . . . [I]t Makes Sense" Statement During Cross-Examination**

{9} Dr. Silverman made only four statements that even come close to pertaining to causation testimony. We must consider evidence revealed through cross-examination. *McNeill*, 2003-NMCA-078, ¶ 31. During cross-examination, defense counsel asserted that there was no way for Dr. Silverman "to rule out other possible causes for [Plaintiff's] pain because you just don't have any other information." Dr. Silverman replied with a rather cryptic answer: "[B]ased on her history, and then the consistency of the rest of the examination, and without any new injuries or anything within that time, it makes sense." Dr. Silverman subsequently became confused when defense counsel attempted to clarify whether that response effectively meant "yes." In a

6

further attempt to clarify, defense counsel simplified a complex question by asking a series of questions, beginning with "[y]ou've already made up your mind that there's only one possible cause, correct? And that's the car accident." Dr. Silverman answered: "Based on the information retrieved from the patient." Counsel clarified: "But you haven't ruled out any other possibilities?" Dr. Silverman confirmed: "That's correct."

{10} Here, we focus on Dr. Silverman's answer to defense counsel's question of whether the car accident was the "one possible cause." First, Dr. Silverman never actually answered the question in the affirmative or negative. We consider any inferences in favor of the non-movant and, therefore, assume that an affirmative answer was implied. Even then, we cannot see this as a statement sufficient to prove causation.

{11} By basing her decision that there was "only one possible cause" for Plaintiff's injuries "on the information retrieved from [Plaintiff]" and "without any new injuries or anything within that time," Dr. Silverman effectively did little more than reiterate Plaintiff's testimony. She offered no indication that her determination of causation was based on her opinion as Plaintiff's treating chiropractor, nor did she elaborate on any indication or background used to come to a conclusion regarding causation. The purpose of Dr. Silverman's testimony was to establish what, to a layperson, would

7

seem like an obscure link between a car accident and injuries that were treated months later.

{12} When a physical injury is coincident with or immediately follows an accident, lay testimony may be sufficient to present causation testimony to the triers of fact. *Cf. Mascarenas v. Gonzales*, 1972-NMCA-062, ¶ 6, 83 N.M. 749, 497 P.2d 751 (reasoning that, in a malpractice case, "where negligence . . . is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required"). Courts cannot, however, "allow a jury to conjecture or speculate about a matter" that is particularly within the knowledge of an expert. *Id.* Where the injury complained of is neither coincident with, nor immediately follows, an accident, expert testimony is necessary to establish a causal link between the injury and accident. *Cf. Alspaugh v. Mountain States Mut. Cas. Co.*, 1959-NMSC-057, ¶ 14, 66 N.M. 126, 343 P.2d 697 ("[T]he natural experience of mankind does not suggest the presence of a causal connection where more than three months elapsed between the [accident and the injury]." (internal quotation marks and citation omitted)), *superseded by statute as stated in Renfro v. San Juan Hosp., Inc.*, 1965-NMSC-067, 75 N.M. 235, 403 P.2d 681.

{13} Following this reasoning, had the injury been reported and treatment started immediately after the accident, Plaintiff's testimony could have been sufficient to establish the element of causation. Because of the eight-month delay between the

8

accident and the treatment, however, expert testimony is necessary to draw a causal connection. The injury is no longer naturally and directly connected with the accident, and it takes knowledge of the human condition that is outside common knowledge to explain why the two are connected.

{14} By testifying in cryptic generalities and failing to affirmatively draw a connection between the accident and the injuries, Dr. Silverman's testimony failed to explain beyond the extent of a layperson's knowledge. *See Alspaugh*, 1959-NMSC-057, ¶ 14 (finding that a doctor's generalized causation statements and opinion identifying possible causes of death did not establish a causal connection and stating that, if medical experts could not give such causation testimony, "it is not within the province of the court to assume such a causal connection, nor may the court permit the jury so to do"). Such unhelpful expert testimony as that given by Dr. Silverman defeats the purpose of presenting expert testimony on causation. *Cf. Gerety v. Demers*, 1978-NMSC-097, ¶¶ 71, 74, 92 N.M. 396, 589 P.2d 180 (finding in a workmen's compensation case that a directed verdict was proper on the issue of medical malpractice where no expert medical testimony was produced to prove causation and indicating that "expert medical testimony should be employed when the [district] court reasonably decides that it is necessary to properly inform the jurors on the issues[,]" including establishing whether "acts were the proximate cause of the

9

injuries involved"). Dr. Silverman's testimony did nothing to further the knowledge of laypersons on the issue of causation.

**b.** **Dr. Silverman's "Consistent With the Type of Injury" Statement During Direct Examination**

{15} The next instance we address occurred during direct examination when Plaintiff's counsel attempted to elicit opinion testimony from Dr. Silverman: "Doctor, based on your education, training[,] and experience . . . do you have an opinion, to a reasonable chiropractic certainty, whether the injuries for which you treated [Plaintiff] were caused by the auto accident of 9/28/07?" Dr. Silverman acknowledged that she did have an opinion and, when asked what that opinion was, answered: "The opinion is that based on all the things you just mentioned, my professional ability, and the history, the exam, the X-rays, is very consistent with the type of injury that . . . she experienced." Counsel asked Dr. Silverman to explain "how it is that an injury of hers, such as you say she suffered in the accident, such as she says she suffered in the accident, how is it that symptoms can at first be subtle and then increase over the next few months?" Dr. Silverman answered in generalities, stating that "pain is usually . . . the last thing to come out and the very first thing to go away. . . . People go on, and think they're fine, and then . . . it could be a year or two, things kind of slowly come up. It happens very often."

{16} Although Plaintiff's counsel understood that "the doctor had answered the question of causation affirmatively," we cannot come to the same conclusion. Plaintiff quotes *Alvillar v. Hatfield* in support of her assertion that Dr. Silverman's testimony was "substantial medical evidence of causation." 1971-NMCA-063, ¶ 10, 82 N.M. 565, 484 P.2d 1275.

> The doctor gave his opinion that [the] plaintiff's condition at trial "came from" the [car] accident. This opinion was based on the history received from [the] plaintiff and the "findings" when the doctor examined the plaintiff. The opinion was on the basis of a reasonable medical probability. This is substantial medical evidence of causation.

*Id.* In tying the facts of the case at hand to the cited passage, Plaintiff overlooks the "came from" language quoted. Instead, Plaintiff focuses on the "findings" that Dr. Silverman made and the "medical probability" of a reasonable chiropractic certainty. We, however, can find no instance in which we can conclude that Dr. Silverman established the injuries "came from" the accident at issue. Because correlation is not causation, Dr. Silverman failed to establish the latter by dwelling only on the former.

{17} When questioned about the cause of Plaintiff's injuries, Dr. Silverman responded that something, although it is unclear exactly what, is consistent with the type of injuries Plaintiff had. Even if, considering the testimony in the light most favorable to the Plaintiff, we were to infer that Dr. Silverman's "consistent" language somehow referred to the accident, it still does not constitute causation evidence. We cannot stretch the inference so far as to equate "consistent with" with "caused by" or

11

"came from." To say that the accident caused the injuries is not and cannot be thought of as equivalent to saying the accident was consistent with the types of injuries obtained. Furthermore, Dr. Silverman answered a question regarding causation with a statement regarding an injury. Such a substantial deviation from the crux of the question is unresponsive.

**c.    Dr. Silverman's Bill Was "Caused by the Accident"**

{18}    The third instance of possible causation testimony also occurred on direct examination when Plaintiff's counsel inquired:  "Do you have an opinion as to a reasonable chiropractic certainty, whether the charges shown on this bill are reasonable and necessary and caused by the accident at issue?"  Dr. Silverman answered: "Yes, they are." Although this answer is amply clear, it does not constitute evidence of causation of the injury she treated.  Dr. Silverman never makes all the connections that are required of causation evidence in this case.  There is testimony regarding Plaintiff's injuries, testimony explaining what treatments were prescribed for those injuries, and even testimony linking Dr. Silverman's bills to the treatment given.  Despite all the information used to tie the bill to the treatment, and the treatment to the injury, Plaintiff's counsel never established the final, and most important, connection—testimony tying the injuries' cause to the accident.

**d.    Dr. Silverman's "It Was Very Consistent in Her Findings" Statement During Cross-Examination**

12

{19} We look now to the fourth and final example of possible causation testimony given at trial. Dr. Silverman was asked on cross-examination whether "[t]he only way . . . you are able to connect [Plaintiff's] pain to the accident is based on what she told you." Dr. Silverman answered in a rather cryptic fashion:

> Well, in order for me to come up with a diagnosis based on my professional ability, whether it's through my training and everything else, a history is just as important as an exam and diagnostic testing in coming up with a diagnosis. So I put that all together, and it was very clear. It was very consistent in her findings.

Defense counsel proceeded to impeach the witness using deposition testimony, to which Dr. Silverman responded: "The only way I can connect this injury . . . to the accident is based on what she tells me, and then to see if the exam and the . . . diagnostic, which is X-rays or the JTEC or whatever, is consistent."

{20} Again, although Dr. Silverman was adamant concerning the consistency of her findings, she failed to describe what exactly was consistent, or what her findings were consistent with. Once again, we must view this testimony in the light most favorable to Plaintiff. Thus, we infer that Dr. Silverman intended to convey that the information Plaintiff gave her concerning the car accident was consistent with the findings that she then made. This testimony does not, however, reflect the doctor's opinion as an affirmative belief that the accident caused the injuries. Rather, this is simply a statement that the type of accident described matched the diagnosis given. Dr. Silverman's testimony here consists of general statements that are insufficient to

13

match the single car accident in question to the injuries for which Plaintiff was treated. *See Renfro*, 1965-NMSC-067, ¶ 9 (stating, in the context of a workmen's compensation trial, medical testimony establishing that an accident "could, rather than that it did," cause an injury does not meet the burden of proving a causal connection because "[s]uch testimony does not rise above speculation and surmise"). As we explained above, we cannot find "consistent with" to be synonymous with "caused by." Because her answers were vague, we consider this answer non-responsive on the issue of causation.

{21}     In reviewing the motion for judgment as a matter of law, we must review the evidence and all reasonable inferences in the light most favorable to the non-movant. *Archuleta v. Pina*, 1974-NMSC-021, ¶ 2, 86 N.M. 94, 519 P.2d 1175. Although this standard oftentimes benefits plaintiffs struggling to survive a directed verdict, it cannot be used to salvage cases where the plaintiff's case-in-chief produced no evidence of an essential element. Even viewing the evidence in the light most favorable to Plaintiff, we conclude that any causal connection the jury could have made in this case would have been based not on the evidence and testimony given, but rather on conjecture and speculation. As such, we conclude that there was not a legally sufficient evidentiary basis for the jury to find causation.

**2.      The District Court's Written Order Has Priority Over Its Oral Order**

14

{22}    Two of Plaintiff's six arguments to this Court ask us to reverse based on the district court's statements during oral deliberations of Defendant's motion. In instances where the district court's oral statement conflicts with its written order, the written order controls, and we need not consider the oral statement as a basis for reversal. *See Ledbetter v. Webb*, 1985-NMSC-112, ¶ 34, 103 N.M. 597, 711 P.2d 874 (explaining that, although a court's verbal comments can be used to clarify a finding of fact, they "may not provide the basis for reversing that finding"). As such, Plaintiff's argument that directed verdict was inappropriate based solely on statements the district court made while hearing the motion misses its mark.

{23}    Plaintiff asserts that "Judge Raphaelson eventually admitted . . . that Dr. Silverman had testified that the injuries were caused by the accident. For that reason alone, it is clear that judgment as a matter of law was inappropriate." Although the district court, during oral deliberations, acknowledged that Plaintiff barely "made the hurdle" and "there was some evidence that . . . the treatment was caused by the accident[,]" the written order granting the Defendant's motion concludes that "Dr. Silverman's testimony did not meet Plaintiff's burden of proof on the causation element."

{24}    Plaintiff similarly asserts that the district court's ruling was "that there can be no verdict for . . . Plaintiff unless *the jury* finds that the expert's opinion is scientifically reliable[.]" Plaintiff grounds this assertion on the district court's

15

language stating that "[t]here is insufficient foundation laid to allow the jury to conclude that that opinion was based on reliable scientific evidence." In the district court's written order, however, it found that "[Dr. Silverman's] opinion lacked a legally sufficient foundational evidentiary basis that would enable the jurors to properly conclude that a causal connection existed" and ultimately concluded that "Plaintiff failed to meet her burden [of] proof on the causation element of her claims[.]"[1] Because we look to the written order, rather than the oral statements of the district court when looking at whether reversal is warranted, we conclude that the written order's disposition of the case through a directed verdict is appropriate.

## II.   CONCLUSION

{25}   Even viewing the evidence in the light most favorable to Plaintiff, the testimony given during her case-in-chief was legally insufficient to prove causation. As such, we need not reach the issue of whether the foundation for Dr. Silverman's opinion was based on a legally sufficient evidentiary basis, such that a reasonable jury could find for Plaintiff. We therefore affirm the district court's ruling.

{26}   **IT IS SO ORDERED.**

_____

[1]We find Plaintiff's argument here similarly unpersuasive because of the numerous instances in which the district court orally stated the correct standard.

16

**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JAMES J. WECHSLER, Judge**

_____
**M. MONICA ZAMORA, Judge**